## Zercher *v.* Philadelphia Rapid Transit Company, Appellant.

*Negligence—Street railway companies—Fall of trolley pole—Injury to bystander—Res ipsa loquitur—Evidence.*

A woman who is injured by the fall of a trolley pole from a passing street car cannot recover damages from the railway company for the injuries sustained where it appears that at the time of the accident she was standing on a street corner waiting for the car to pass without any intention of becoming a passenger thereon, and there is no evidence whatever to show what caused the fall of the pole, or that its fall was due to any negligent act or omission on the part of the company or its employees. In such a case the maxim res ipsa loquitur has no application.

Argued Dec. 15, 1911. Appeal, No. 14, Oct. T., 1911, by defendant, from judgment of C. P. No. 5, Phila. Co., March T., 1908, No. 4,944, on verdict for plaintiff in case of Bertha M. Zercher v. Philadelphia Rapid Transit Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before RALSTON, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,400, upon which judgment was entered for $1,000, all above that amount having been remitted.  Defendant appealed.

*Error assigned* was in refusing defendant's motion for judgment n. o. v.

*Owen J. Roberts,* with him *Thomas Leaming,* for appellee.

*M. F. McCullough,* with him *James M. Dohan,* for appellee.

Opinion by Head, J., July 18, 1912:

The plaintiff rests her right to recover damages on the following averment of her statement: "Nevertheless the defendant, disregarding its duty in this behalf, so carelessly operated and controlled one of its said cars that as the plaintiff was carefully crossing Fourth street, etc., the pole which was attached to the top of said car and is a part thereof and used in its control and management, fell from the top of said car and struck the plaintiff, etc."  The testimony produced on the trial to support this allegation was extremely brief.  The plaintiff herself, after describing how she and her companion reached the point where the accident happened, has this and this only to say as to the occurrence from which her injury resulted: "We were waiting for the car to turn the corner . . . . so that we could cross. . . .  While we were waiting for the car, I didn't know—just heard a noise—that was all I could hear and didn't know anything until I felt a severe blow on the shoulder which threw me to the ground and hurt my friend too, . . . and while I was there I saw that the pole of the trolley car had come off and I had to bow my head so it would not strike me on the head, and while I was there the pole struck me.  Q. Where were you struck by this pole?  A. Struck on the left shoulder.  Q. Did you see the pole afterwards on

the ground? A. I saw the pole afterwards as I was getting up. Saw the pole there." All of the remainder of her testimony is descriptive of the nature and extent of the injuries sustained, but there is not another word as to the character of the accident or its cause except that quoted. Her companion at the time, called by the plaintiff, confined herself to this brief description of the accident: "As we were about to cross at Fourth street the Willow Grove car was about to turn the corner and the pole fell off and struck Miss Zercher on the shoulder—it fell between us and struck me on the knee—and somehow or other it threw her on the street and dragged her for several rods, breaking her collar bone. Q. Did you see this pole after it struck yourself and Miss Zercher? A. Yes, sir. Q. Where was it? A. On the ground. Q. What was there? A. The pole and the attachments. It was one of these dinkey cars. Q. What attachments? A. A sort of bar that holds it on the cars." But two other witnesses were called for the plaintiff whose testimony had any relation at all to the occurrence although neither of them appeared on the scene until just after the accident. The witness Bleakley says: "Miss Zercher was on the ground. Q. What did you see with regard to anything connected with the car? A. The pole was on the ground. The whole pole including the attachments that is on top of the car."

Now it is manifest that this testimony is absolutely barren of even a scintilla of evidence tending to support the material averment of the declaration which we have quoted. Unless then the situation described by the plaintiff and her witnesses brings this case within the operation of the principle expressed in the maxim res ipsa loquitur, which is an exception to the general rule, the plaintiff's case has failed. It is true that in administering the rule cases have arisen of such a character that the courts have felt obliged to consider, as legally sufficient to support an averment of negligence, a very slight amount of evidence in addition to the circumstances of the accident

itself. Booth v. Dorsey, 208 Pa. 276, and Ahern v. Melvin, 21 Pa. Superior Ct. 462, are fair illustrations of this class of cases. It will be observed, however, from an examination of the record of each of these cases that there was testimony, apart from the occurrence itself, tending to show that the injury resulted from the careless act of the servant or employee of the defendant. Here there is not a line or syllable tending to establish any such fact. The pole fell and injured the plaintiff. Unless that fact is a witness for the plaintiff and speaks in support of her averment, she is absolutely without proof to sustain it.

There is nothing to show whether the car was an old one or a new one; no hint that it was being operated in any unusual or improper manner; not a spark of evidence that it was not equipped in the usual and ordinary manner or was not controlled by the usual officials; nothing to even faintly indicate that the condition of the pole, as it lay on the sidewalk, exhibited any appearance that would warrant an inference its fall came from some defect that would have been discovered by proper inspection; in a word, nothing but the fact that it fell with the consequent injury to the plaintiff.

Can it be successfully argued that we have here a proper case for the application of the exceptional principle expressed in the maxim already quoted? The force of the argument of the able counsel for the appellee in support of this conclusion is fairly expressed in the following paragraph from the conclusion of his printed brief: "The plaintiff was injured by the fall of a mechanical appliance attached to one of the defendant's cars. This trolley pole was in the exclusive control of the defendant company. The duty of keeping it in position and repair was wholly its own and the result was so far out of the usual course that there was no fair inference from the testimony that it could have been produced from any other cause, than the negligence of the company in the original construction or in their manner of keeping it in good condition and proper repair." Whatever might be said of the convincing

character of the argument to support the desired conclusion, were the question an open one, it would be useless for us to discuss it because we think it has been authoritatively answered by several recent cases in the Supreme Court and this court which we are obliged to follow.

It should be here remarked that no contractual relation of any character existed between the plaintiff and the defendant. She was not an actual or intended passenger either upon the car from which the pole fell or any other. She was in the exercise of her lawful right as a pedestrian on the sidewalk of a street of the city. The defendant was in the exercise of its lawful right operating its cars along that street. Neither had undertaken to perform towards the other any other duty except that imposed by the law on every one who makes a lawful use of the public street, to wit, the duty of enjoying his own right with such reasonable care as not to do injury to another. It is only from a failure to perform that duty that a charge of negligence could be successfully asserted. In the eye of the law the situation is not different from what it would be had the injury resulted from the falling of any article from the loaded wagon of a teamster using the street, where there was nothing to indicate that there had been any negligence in building or securing the load upon the vehicle which carried it.

In Kepner v. Traction Co., 183 Pa. 24, the opinion of the court was delivered by Mr. Justice McCollum who had also spoken for the court in the earlier case of Shafer v. Lacock, 168 Pa. 497, the latter case being much relied on to support the argument of the appellee. The distinction is thus pointed out in the later opinion: "In Shafer v. Lacock it was held that the circumstances shown by the evidence authorized an inference or presumption of negligence which cast on the defendants the burden of showing their freedom from fault in connection with the destruction of the plaintiff's house. In the case last cited, as in the cases previously referred to, there was a contract relation between the parties which required of the defendants the

use of proper appliances and the employment of careful and skillful workmen to carry out their agreement with the plaintiff." It is further pointed out in the same opinion that there was, in the Shafer case, independent evidence from the workmen engaged on the building that the fire which destroyed it was caused by their carelessness. We are free to admit that the record of the Kepner case presents some features upon which a plausible argument could be made to distinguish it from the case in hand, and were it the only case in point, or the one that chiefly controls us in the conclusion reached, we should think it important to consider these features. But in Patterson Coal & Supply Co. v. Pittsburg Railways Co., 37 Pa. Superior Ct. 212, we have a case, the most careful examination of which has led to no discovery of any material fact or circumstance which could fairly be said to distinguish it in any respect from the case at bar. The defendant there, as here, was a street car company operating cars over the streets of the city of Pittsburg. In doing so, it of course maintained an overhead wire structure carrying the current from which the trolley pole conveyed it to the body of the car. The wire there, like the pole here, was, to repeat the language of the appellee's brief, "in the exclusive control of the defendant company. The duty of keeping it in position and repair was wholly its own," etc. The plaintiff in that case, like the plaintiff here, was exercising his lawful right on the public street traversed by the defendant's cars. The overhead wire broke and fell upon the team of horses, the heavy current killing them both. The plaintiff there averred that "the injuries complained of were wholly due to the carelessness and negligence of said defendant in the construction of said wire and their failure to keep the same in a sound and safe condition and proper state of repair." There the plaintiff, in support of the averment quoted, proved nothing except the fact that the wire broke and the injury resulted. The testimony was barren of anything tending to show the cause of the break. The opinion by

PORTER, J., reviews a number of the cases and discusses at length the case of Kepner v. The Traction Company, quoting both from the opinion of the learned trial judge and from that of Mr. Justice McCOLLUM. He thus concludes: "Careful consideration of the entire opinion of the Supreme Court in that case can only lead to the conclusion that the decision was based upon the ground that the plaintiff, in proving only that the trolley wire had broken, had not produced sufficient evidence to sustain a finding that the defendant had been guilty of negligence. That decision rules this case."

In Lanning v. Pittsburg Railways Co., 229 Pa. 575, we again have a deliberate and most recent utterance of the Supreme Court in a case practically on all fours with the one before us, which leaves us neither the right nor the opportunity to reach any other conclusion than that the judgment in the present case must be reversed. In the case cited the plaintiff was a pedestrian crossing a public street in a borough. The trolley wire of the defendant company parted and she, while crossing, was either knocked down by one end of the broken wire or fell in an effort to avoid it. The situation of the parties there was precisely that exhibited by this record. It can hardly be contended that because in that case the wire broke and fell, whilst in this case it was the trolley pole, any appreciable difference could result. The obligation of the company in relation to its wire was precisely that in relation to its trolley pole. The plaintiff proved nothing as to the cause of the breaking of the wire, but relied on the fact as sufficient evidence to warrant a jury in making the inference that the break was caused by negligence, unless the defendant otherwise satisfactorily explained it. That is precisely the condition here. In delivering the opinion of the court, Mr. Justice BROWN said: "Whatever may be the rule in other jurisdictions as to the presumption of negligence, whenever one traveling on the street of a municipality is injured by an appliance of a company using electricity upon or over the street, our

cases recognize no such presumption. With us the rule res ipsa loquitur does not apply in such a case, and the burden was upon the appellees to show more than the mere breaking of the wire: Kepner v. Traction Co., 183 Pa. 24. The burden was upon them to show that the breaking was due to some negligence of the company, and, having charged in their statement the specific negligence which resulted in the breaking, it was upon them to establish that negligence on the trial. Until street railway companies are made insurers of the safety of persons, traveling over the streets and highways of the commonwealth, against injury from any appliances used in their transportation systems, one injured, as this plaintiff was, must prove more than the mere fact of the breaking of the trolley wire." In that case a judgment for the plaintiff was reversed and a judgment was entered for the defendant. If that clear utterance of the Supreme Court does not control our action in the present case, it is beyond the power of this opinion writer either to apprehend or express the reasons why.

Under the authority of these cases we must conclude it was the duty of the learned trial judge to have affirmed the defendant's prayer for binding instructions, or, failing that, to have subsequently granted its motion for judgment non obstante veredicto.

The assignments of error are sustained, the judgment is reversed, and judgment is now entered in favor of defendant.