## McCoy, Appellant, *v.* George et al.

Argued April 28, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Charles Lysle Seif,* of *Seif, Evashwick & Best,* with him *Wallace M. Parker,* for appellant.

*Alan D. Riester,* with him *J. R. McNary,* for appellees.

OPINION BY KENWORTHEY, J., July 23, 1942:

This action is based on negligence. The plaintiff is a dentist. The relief sought is damages for the de-

struction of his office equipment by fire. After a verdict in the sum of $2000 he filed a motion for new trial on the ground the verdict was inadequate. Defendant filed a motion for judgment n. o. v. The court granted the motion for judgment n. o. v. and refused the motion for new trial; the plaintiff appealed.

Appellant occupied the second floor of a V-shaped, triangular building fronting on three streets of the City of Pittsburgh, Fifth Avenue, Liberty Street, and Market Street. Trolley cars of appellees which pass the Fifth Avenue side of the building going north make a sharp turn into Liberty Street, the turn being greater than a right angle. The cars are powered by an overhead line which, of course, turns the corner with the tracks. It appears from photographs that at the apex of the curve there are three guy wires closely spaced on the trolley wire, which converge to a single attachment on a pole across the street from appellant's office. On the corner adjacent to the office building is another post to which are attached a veritable network of overhead wires. In addition to several guy wires, there is the necessary wiring for an attached traffic light and a large electric sign. A flexible cable leads from the electric sign to the building where it connects, through a panel board, with appellant's electrical equipment.

For perhaps a year prior to the accident it was a daily occurrence that, as appellees' cars negotiated the curve, the trolley pole would fly off and strike one or more of the guy wires. According to a qualified engineer, this striking of the pole against the guy wires would "tend to weaken either the insulator or the wires and their connections."

About six o'clock in the morning of December 17, 1938, as a car was passing, a policeman observed an unusual flash which "seemed to be coming from the trolley, the antenna to the trolley wire ......" The car stopped, the motorman got off, replaced the trolley pole which had slipped off the wire, and the car then

moved on. The policeman then "looked up there and saw a [guy] wire dangling." This was immediately followed by the appearance of a flame along the wire leading from the electric sign to the building. And about a minute later, there was a flash or explosion on the second floor of the building.

In its opinion, the lower court said: "The weakness of plaintiff's position, as we view it, is that assuming that the breaking of the insulator, thereby causing the span wire to hang down, was the proximate cause of the injury complained of—and, in our opinion, there cannot be any serious question as to that—and that it was in a weakened condition as a result of the trolley poles striking against the wires or their attachments, there is no evidence that the weakness was patent and therefore discernible upon reasonable examination and inspection or what, if any, practicable measures should have been taken to guard against the breaking of the insulator or the wires."

We are unable to agree with the conclusion that there was insufficient evidence to support a finding of negligence.

It is well settled in this Commonwealth, that the rule of res ipsa loquitur does not apply to a broken trolley wire or a fallen trolley pole. *Lanning v. Pittsburg Railways Co.*, 229 Pa. 575, 79 A. 136; *Patterson Coal & Supply Co., v. Pittsburg Railways Co.*, 37 Pa. Superior Ct. 212; *Zercher v. Philadelphia Rapid Transit Co.*, 50 Pa. Superior Ct. 324. But the quantum of proof necessary to establish negligence is very slight. *Dougherty v. Philadephia Rapid Transit Co.*, 257 Pa. 118, 124, 101 A. 344. We think it was supplied by the evidence that the pole was permitted frequently to slip off and strike the guy wire, that the striking would have a tendency to weaken the insulator or the wire and that, after the condition had been permitted to exist for about a year, the wire or insulator broke. The test is whether defendant's conduct would, with reasonable forsee-

ability, result in injury, not merely whether the weakness in the guy wires could be observed by inspection. Nor was it appellant's duty to suggest what corrective measures should have been adopted. In *Dougherty v. Philadelphia Rapid Transit Co.*, supra, the court suggested the conductor might be instructed to hold the trolley pole rope when the car traveled over a spot where an accident might happen if the trolley pole slipped off. In the present case, if some of the cars were one-man cars, the appellees might have assigned an extra man to board the cars as they negotiated the corner, or perhaps the appellees could have ascertained how long it would ordinarily require the wires to become weakened to the danger point and replaced them periodically. But these questions were all for the jury, not the court.

The order granting appellees' motion for judgment n. o. v. must be vacated.

There remains for consideration appellant's argument that the court also erred in refusing his motion for new trial. He offered evidence which, if believed, might have justified a verdict in his favor for approximately $4500. This represented the total value of property alleged to have been destroyed. But the evidence was oral and its weight for the jury. Since the verdict was substantial, we would not consider the refusal of a new trial an abuse of discretion. *Woodward v. Consolidated Traction Co.*, 17 Pa. Superior Ct. 576; *Zamojc v. Fisher*, 127 Pa. Superior Ct. 171, 193 A. 315; *Patterson v. Pittsburgh Railways Co.*, 136 Pa. Superior Ct. 432, 7 A. (2d) 478. But motions for new trial are primarily addressed to the discretion of the trial court. And since it does not appear that the motion was disposed of on its merits but was refused because of the court's conclusion to enter judgment n. o. v., we consider it better practice to return the record so that appellant's motion for new trial may be decided on its merits.

See *Dalmas v. Kemble*, 215 Pa. 410, 413, 64 A. 559; *Buck v. Henry*, 52 Pa. Superior Ct. 477, 481.

It is so ordered.