# Dougherty, Appellant, *v.* Philadelphia Rapid Transit Co.

*Negligence—Street railways—Pedestrians—Fall of trolley pole—
Circumstantial evidence—Expert witnesses—Competency — Scope
of examination—Proximate cause—Amendments—New cause of ac-
tion—Statute of limitations—Practice, C. P.*

1. While the rule of many jurisdictions that where a thing is
shown to be under the management of the defendant and his serv-
ants, and an accident occurring in respect thereto is such as in the
ordinary course of things does not happen if those who have the
management use proper care, it offers reasonable evidence, in the
absence of explanation by the defendant, that the accident arose
from want of care, has not been applied in this State to cases such
as · the present one, nevertheless under such circumstances the
quantum of proof necessary to establish negligence need be very
slight and may be merely circumstantial if sufficiently strong to
carry conviction to a reasonable mind.

2. Where, in an action against a street railway company to re-
cover for personal injuries sustained in consequence of the fall of
a trolley pole upon a pedestrian, there was uncontradicted evidence
that the pole and equipment was in good condition after the acci-
dent, the trial judge did not err in refusing to permit a witness
who had worked for a considerable number of years for defendant
and had left its services five years before the accident, since which
time he had no experience with trolley cars, to state whether ,as a
result of his experience a trolley wheel could leave the wire if the
pole were properly adjusted, in the absence of an offer to prove that
the trolley equipment was the same at the time of the accident as
when the witness acquired his alleged special knowledge; and
especially where it appeared that the actual condition of the trolley
equipment was susceptible of direct proof. Had the preliminary
inquiry developed testimony from which the jury might have
reached the conclusion that the pole had not been properly ad-
justed, and had this testimony been met by counter-proofs, then,
perhaps, the question would have been proper.

3. Where in such case there was a network of wires at the place
of the accident, it was reversible error to refuse to permit plaintiff
to prove by an expert who had worked with defendant for ten years
previous to the trial, that trolleys would frequently leave the wires,
and when they did so at a network there was constant danger of the
trolley wheel catching in the wires and pulling the pole out of its

socket, and that it would be dangerous to cross such a network without taking hold of the trolley rope to prevent the trolley wheel from being caught in the wires, and that the instructions to conductors at the time of the accident were to take hold of the rope at such a place, although there was no written rule to that effect.

4. Where there was evidence that at the time of the accident the wire on which the trolley traveled was "flopping up and down" and that the trolley left the wire, and that the rope had not been held by the conductor, there was sufficient circumstantial evidence to require the submission of the case to the jury so that they could determine whether the pole had been pulled from the top of the car by becoming enmeshed in the wires, and if so whether the conductor was guilty of negligence in failing to hold the rope at the place in question and whether such negligence was the proximate cause of the accident, and the entry of a nonsuit was error.

5. Where the statement of claim averred that it was the duty of the defendant to inspect and repair its cars, and to operate and control them upon the streets of the city in a proper and careful manner, so that pedestrians crossing the streets should not be injured by said cars or by the falling of said cars or any part thereof, it was not error, after the statute of limitations had run, to refuse to permit plaintiff to amend the statement of claim so as to aver that it was the duty of the defendant to have a special automatic device upon its cars to keep its trolley poles from catching in such wires in case they should leave the lines.

Argued Jan. 23, 1917. Appeal, No. 300, Jan. T., 1916, by plaintiff, from order of C. P. No. 4, Philadelphia Co., Dec. T., 1910, No. 2711, refusing to take off nonsuit, in case of Elizabeth Dougherty v. Philadelphia Rapid Transit Company. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.  Reversed.

Trespass to recover damages for personal injuries. Before CARR, J.

The opinion of the Supreme Court states the facts.

The trial judge entered a compulsory nonsuit which the court in banc subsequently refused to take off. Plaintiff appealed.

*Errors assigned* were rulings on evidence and in refusing to take off the nonsuit.

*Frederick J. Shoyer,* with him *Martin Feldman* and *Henry Arronson,* for appellant.

*Harold B. Beitler,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, March 12, 1917:

This is an appeal from the refusal to remove a nonsuit. The assignments of error raise numerous questions; but we shall discuss only such of them as are in some sense controlling.

On September 24, 1910, at about two o'clock in the afternoon, the plaintiff, a pedestrian upon the streets of the City of Philadelphia, was suddenly struck and knocked down by a detached trolley pole which fell from the top of one of defendant's cars, at the junction of Ridge avenue, Tenth and Callowhill streets.

When the case came to trial, the defendant produced its motorman and conductor, as well as the inspector who examined the car in question, all three of whom were placed upon the stand by the plaintiff. So far as the notes of testimony indicate, these witnesses were willing and fair; but their examination failed to disclose anything unusual or defective in the construction or maintenance of the offending car or its appliances. On the contrary, it appears that, immediately after the accident, the trolley pole showed no blemishes or defects; that it was replaced in its socket, in apparently good condition, and the car operated as usual; further, that, when the car was turned in for inspection, the pole was "straight" and all its parts were in good repair; finally, the inspector said that his examination did not disclose or throw any light upon what caused the trolley to leave its wire.

In addition to the witnesses already referred to, a Mr. Mulford was called by the plaintiff. It appears from this man's testimony that there were single lines of trolley wires suspended over both Tenth and Callowhill

streets, and a double line over Ridge avenue, all of these crossing one another and forming a net work at the point of the accident; that, when he arrived upon the scene, the injured woman was lying on the ground; and that the wire upon which the trolley pole in question operated, was "flopping up and down," the rise and fall covering a distance of from five to six inches.

The motorman said that, just before the accident, he got a signal from the conductor to start, and "went ahead"; that, almost immediately, "the power left the car," and it stopped; that he stepped off to see what had happened, and found the pole lying in the street. The conductor testified that, when the car started, "it gave a certain crack," and the trolley pole fell to the street.

We have summarized all the material evidence in the case, excepting that the motorman stated there was nothing he saw or knew of which could have caused the detachment and fall of the pole; and this excludes the theory of the possible intervention of an external agency. With the testimony thus, plaintiff offered two experienced trolley car operators, as experts, and the rejection of certain questions put to them are the principal matters complained of in the various assignments of error.

The first expert had worked a considerable period for the defendant company, leaving their service about five years before the accident, and, so far as the record shows, his experience with trolley cars was all gained at that time, he having subsequently gone into another line of employment. There was no offer to prove the trolley equipment, etc., was the same at the date of the accident as when the witness in question acquired his alleged special knowledge. Hence, with this lack in the evidence, his opinion on the questions put to him would not have been a safe guide for the jury; but, aside from this aspect of the matter, after mature thought, we do not see that there was sufficient foundation to justify the following interrogatory, put to the witness by counsel for plaintiff: "As a result of your experience, could a

trolley wheel leave the wire if the pole was properly adjusted?"

The question just stated, which was disallowed by the trial judge, covers in substance the point sought to be raised by several of the assignments of error; and its evident purpose was to prove, if possible, by opinion testimony that which was susceptible of proof by direct evidence, i. e., the fact as to whether or not the pole had been properly adjusted.

As previously stated, the notes of testimony show that the plaintiff had no difficulty in securing the attendance of the defendant's employees, and, furthermore, the latter's evidence indicates that, after the accident, the pole and other trolley appliances were in good condition. If the plaintiff wanted to inquire as to the inspection and adjustment of this pole, prior to the accident, there was nothing to prevent him from so doing. Had such a preliminary inquiry developed testimony from which the jury might have reached the conclusion that the pole had not been properly adjusted, and had this testimony been met by counter proofs, then, perhaps, the question under consideration would have been a proper one; but, on the record as it stands, we see no error in the ruling of the court below with reference thereto.

The other expert had gained his experience by working as a conductor for the defendant company during a period of ten years, from 1905 to 1915. The plaintiff offered to prove by this witness that trolleys "would frequently leave the wire; that, as a result of leaving the wire, at an intersection such as Tenth and Callowhill streets and Ridge avenue, there was constant danger of the trolley wheel catching in the wires, the result of which would be, if the car moved on, to pull the pole out of the socket......"; again, that "it would be dangerous to cross a network of wires such as there was at this place [the point of the accident] without taking hold of the trolley rope to prevent it [the trolley wheel] being

caught in the wires above; and that the instructions were to conductors, at that time, to take hold of the rope at such a place." These offers were rejected, and the plaintiff secured proper exceptions.

It is true that the printed rules of the company, produced by the defendant, did not provide any instructions to conductors such as suggested in the offer; but the fact that the printed rules failed in this respect did not render it impossible that oral instructions might have been given, as contended by the plaintiff. Whether or not such instructions were given, however, if it could be shown as a fact that trolleys frequently leave their wires, that, on such occasions, there is constant danger of the trolley wheel catching, and that this danger is well known and could be avoided by the conductor holding the rope, it would be a question for the jury whether or not, under the conditions existing at the point of this accident, the present car was operated with ordinary, due care when the conductor failed to hold the rope.

There was some direct proof that this trolley left the wire, and, in addition, we have the circumstance of the latter flopping up and down. On the whole, we think that there was sufficient circumstantial evidence to require its submission to the jury, so that they might determine whether or not the trolley pole had been pulled from the top of the car by becoming enmeshed in the wires, and, further, if they so found, whether or not the conductor was guilty of negligence in failing to hold the rope at the place in question; finally, if he was so guilty, whether or not his neglect was the proximate cause of the accident. Outside of Pennsylvania, there is a strong line of cases which hold that the mere happening of such an accident as the one here under investigation puts the burden of explanation upon the defendant. These cases go upon the principle that, "Where a thing is shown to be under the management of the defendant and his servants, and the accident is such as in the ordinary course of things does not happen if those who have the

management use proper care, it offers reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care" (see leading case of Scott v. London & St. Katherine Docks Co., 3 Hurlstone & Coltman 594) ; but we have not gone this far; see Lanning v. Pittsburgh Railways Co., 229 Pa. 575-7; Clark v. Philadelphia Rapid Transit Co., 241 Pa. 437; Benson v. Philadelphia Rapid Transit Co., 248 Pa. 302; Zercher v. Philadelphia Rapid Transit Co., 50 Pa. Superior Ct. 324—all trolley cases, the last three concerning the fall of poles.

In Geiser v. Pittsburgh Railways Co., 223 Pa. 170, 172, however, where a pedestrian upon the street was injured by a car which jumped its track, near a switch, and the only evidence of negligence was the fact that "the switch point was worn flat," we held the jury might draw the inference that the accident was occasioned by the worn condition of the switch point. There we affirmed per curiam, adopting the opinion of the court below, wherein the applicable principle is stated thus: "It is still the rule of law that the happening of the accident, in such cases as this one, is not evidence itself of negligence, but the quantum of proof necessary to establish negligence, under certain circumstances, need be very slight."

We feel that the rule as just stated should be applied in the present instance. While, before the plaintiff can recover, she must show how the accident happened and fix the defendant with negligence, yet, in so doing, she is not restricted to direct evidence; she may make her case out by circumstantial proofs sufficiently strong to carry conviction to a reasonable mind. As already indicated, we feel that certain parts of the testimony offered should have been allowed as evidence, and that the issues heretofore suggested should have been submitted to the jurors for their determination. In addition to the authorities already cited, see Caffrey v. Philadelphia Rapid Transit Co., 249 Pa. 364; Janock v. Balto. & Ohio R. R. Co., 252 Pa. 199.

One other matter calls for consideration.    The accident happened in 1910; the suit was instituted and the statement of claim filed in 1911.    Plaintiff averred that it was the duty of the defendant properly and carefully to "inspect and repair" its cars and appliances and to operate and control them upon the streets of the city in a proper and careful manner, so that "pedestrians crossing the said streets......should not be injured by said cars or by the falling from said cars of any part or appliance thereof"; that, disregarding these duties, the defendant negligently suffered one of its cars to remain out of repair, and so negligently managed, operated and controlled this car that "the pole which was attached to the top.......suddenly and without warning fell from said......car and struck the plaintiff."    In 1916, the plaintiff asked leave to amend her statement, by adding an averment to the effect that it was the duty of the defendant to operate its cars in such a way as to hinder the trolley wheel from catching in cross wires; that it was known to the defendant that trolleys frequently left their wires at intersecting streets; and that it was the duty of the defendant to have a special automatic device upon its cars to keep its trolley poles from becoming caught in such wires in case they should leave their lines; finally, that, when a device of this kind was not used, it was the duty of the conductor, in approaching street intersections such as the one in this case, to take hold of the rope attached to the trolley pole, in order to control the latter and prevent accidents.    The court below refused to permit these amendments.

There is nothing in the proposed amendments which could not properly be proved under the original statement, except the averment as to the automatic device, and we agree with the learned court below that this could not be added to plaintiff's case after the statute of limitations had run; for the charge of nonperformance of duty on the part of the defendant in not equipping its cars with such a device, would raise a new element call-

ing for a defense entirely different from that required by the averments of the original declaration. If there is such a safety device in general use as alleged in the proposed amendments, of course the defendant ought to install it; but the latter's legal obligation so to do, under penalty of being found guilty of negligence, is a point which, on the pleadings in this case, we are not called upon to discuss or decide. There is no merit in the present assignment.

All specifications of error which direct attention to rulings in conflict with the views here expressed are sustained, and the judgment is reversed with a venire facias de novo.