## Rucinski *v.* Cohn et al., Appellants.

Argued March 19, 1929. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Zeno F. Henninger,* with him *Harry J. Nesbit,* for appellants.—The burden of proving the fact of agency is on him who seeks to establish such fact: Weldon v Traction Co., 27 Pa. Superior Ct. 257; Keyser v. Reilly, 191 Pa. 271; Beal v. Express Co., 13 Pa. Superior Ct. 143; Sylvius v. Kosek, 117 Pa. 67.

Evidence of mere ownership is insufficient: Orluske v. Motors Co., 286 Pa. 170; Lotz v. Hanlon, 217 Pa. 339; Luckett v. Reighard, 248 Pa. 24.

The fact of agency cannot be proven by acts done unless it is proven that the acts were done with knowledge or authority of the principal: Singer Mfg. Co. v. Christian, 211 Pa. 534.

Except in the case of a carrier, the rule is uniform that where recovery is sought on the ground of negligence of defendant, the burden of proof is on plaintiff: Spees v. Boggs, 198 Pa. 112; Dougherty v. Transit Co., 257 Pa. 118; Brown v. El. & Mfg. Co., 256 Pa. 403.

*Cyrus A. Davis,* of *Eckles & Davis,* for appellee.—The fact and scope of agency are for the jury where they are to be proved by parol testimony and circumstances surrounding the transaction: Humbert v. Meyers, 279 Pa. 171; American Car & Foundry Co. v. Water Co., 218 Pa. 542; Singer Mfg. Co. v. Christian, 211 Pa. 534; Hartig v. Ice Co., 290 Pa. 21.

In this case the crane and bucket which fell were in the exclusive control of defendant, and the falling of the bucket is something that does not ordinarily take place if due care is used, and therefore this case comes in the category of those cases wherein only slight evidence of negligence need be produced: Dougherty v. P. R. T. Co.,

257 Pa. 118; Janock v. R. R., 252 Pa. 199; Sgier v. Ry., 260 Pa. 343; Gawronski v. McAdoo, 266 Pa. 449; Martin v. Letter, 282 Pa. 286; Dei v. Stratigos, 287 Pa. 475; Sorenson v. Advertising Co., 284 Pa. 209; Kindall v. Sugar Co., 286 Pa. 359.

If there be any evidence beyond a mere scintilla, however slight, from which the jury may draw an inference favorable to plaintiff, the case should be submitted to them: Bastian v. Phila., 180 Pa. 227; Duffy v. Water & Power Co., 233 Pa. 107.

OPINION BY MR. JUSTICE SCHAFFER, May 13, 1929:

Plaintiff recovered a verdict and judgment in the court below for damages caused by the death of her husband, who was struck and killed by the fall of a large bucket weighing more than 600 pounds forming part of the equipment of a railroad crane, engaged in dismantling a coke plant; she averred the crane was being operated by an employee of defendants, A. H. Cohn & Son.

Defendants, appealing to us to set aside the recovery against them, contend that on the day of the accident, and for several days prior thereto, they had not operated the crane, but that it was being operated by Fried & Mann to whom they had loaned it. It is also urged that no negligence was shown and that the deceased was but a bare licensee to whom the only duty owed was not wilfully, intentionally or wantonly to injure him. Consideration need not be given to the last proposition, as the case will be determined on the other grounds.

A careful reading of the entire record leads us to conclude that the court below hung defendants' liability on a very slender thread, not strong enough to support it. In their affidavit of defense, defendants admitted ownership of the crane. The testimony shows that they had turned it over, without charge, for the use of the partnership which was created to carry on the work of dismantling the plant as part of their contribution thereto. This partnership was really the coalescence of two firms,

A. H. Cohn & Son, the present defendants, composed of A. H. Cohn and Harry Cohn, and Fried & Mann Company, the partners in which were Isadore Fried and Theodore Mann. The new partnership was formed on December 24, 1925, to carry on the work of wrecking the coke plant of the Allegheny By-Products Coke Company at Glassport. Fried and Mann each had a one-third interest in the copartnership and A. H. Cohn & Son the other third.

Indisputably, it seems to us, on January 14, 1926, before the wrecking job was completed, the partners agreed that A. H. Cohn & Son should withdraw from the partnership and it should be dissolved, and that Fried and Mann should thereafter carry on the work. In consideration of their withdrawal, the Cohns were paid the amount of their original subscription to the firm, $6,000 and it was arranged that there should be delivered to them one hundred tons of old rails which were on the property. The agreement is in writing, signed by Fried and Mann and by Harry N. Cohn for A. H. Cohn & Son. It recites that the latter sold for one dollar and other considerations all their interest in the joint undertaking to Fried and Mann and that the partnership was settled. It contains a guarantee by Fried and Mann that Cohn & Son shall be released from the performance bond which had been executed by the partnership to the National Security Company. On the same date, Cohn & Son signed a receipt to Fried and Mann for two checks recited as bearing that date, each for $3,000. "Same $6,000 representing any and all our interest in coke plant at Glassport. We sell out entirely to Mr. I. Fried and Theo. Mann." The two checks were produced and offered in evidence and conclusively show that the agreement of dissolution and receipt could not have been fabricated after the death of plaintiff's husband, which occurred January 17, 1926, as they are dated January 14th, were deposited in bank as shown by the bank's endorsements on January 15th, and went through the Pittsburgh

Clearing House as shown by its stamped endorsement, one of them on January 16th, on which day, as shown by the stamp, it was paid; the other one did not get through the clearing house until the 19th and was not paid until the 22d.

The oral testimony of those who were in position to know sustains the conclusion that the crane was not being operated by defendants. Clarence Miller, the crane operator, called as a witness by plaintiff, said that it was not. His testimony will be more particularly recited hereafter. Harry N. Cohn testified that after the agreement of dissolution was signed on January 14th, Fried requested that he be permitted to use the crane for the balance of the week to give him the opportunity to get another, to which he, Cohn, assented and allowed the crane to remain in Fried's possession until Monday, January 18th, (the accident occurred on Sunday, the 17th,) on which day it was moved, and that it was operated after the 14th and until it was removed by Fried & Mann; that the wages of the crane operator during that time were not paid by Cohn & Son. He said that while the partnership lasted Fried and his brother, Louis Cohn, were in charge of the actual operations in dismantling the plant, and that after the dissolution Fried alone was, and his brother was not; that after January 14th, Cohn & Son paid none of the wages (33 men were employed in the work) but since that date the wages were actually paid by Herbert Greaves, who never had been employed by defendants, who had been put in the place of Louis Cohn as foreman on January 14th, when the Cohns parted with their interest.

Fried testified to the dissolution of the partnership on January 14th and to Fried and Mann's purchase of Cohn & Son's interest therein. He said that on January 14th, after the dissolution, he hired Herbert Greaves to take the place of Louis Cohn as foreman of the job and that thereafter Louis Cohn did not direct any of the operations or pay any wages, that they were paid by Greaves.

He reiterated what Cohn said about allowing the crane to remain for a few days until he, Fried, could secure another, and said that after January 14th Cohn & Son had nothing to do with operating the crane, that he had entered into an arrangement with Miller, its operator, to continue to operate it for them, Fried & Mann, while the crane remained in their possession and that at the time of the accident to plaintiff's decedent, Miller was working for them and not for A. H. Cohn & Son. He averred that prior to January 14th the men were paid by check and after that day they were paid in cash, that he, Fried, was responsible for Miller's having worked on Sunday, the 17th, the day of the accident, and had made the arrangement with him to do so.

Greaves testified that he had never worked for the defendants, nor been employed by anyone in connection with the dismantling of the plant until the morning of January 14th, at which time he was engaged by Fried & Mann as foreman to take charge of the work and pay the men; that he learned of the dissolution of the partnership at this time, and that thereafter Louis Cohn was not in charge of the operation, nor was any member of the Cohn family present or directing the work; that he was acting as foreman on the 14th and was directing Miller in the operation of the crane until 10:30 A. M., when he ordered the latter to take it back to the building where the accident occurred, to coal it and leave it for the rest of the day as it was not further in demand, and that he left the scene only about ten minutes before the accident; and finally, that he and Mann paid the man for January 14th, 15th, 16th and 17th.

Louis Cohn testified that he was in charge of the operation from December 24th to January 14th, on which date A. H. Cohn & Son withdrew from the partnership and after which time he had no concern with the work; that he was not at the coke plant on January 17th until about noon, after the accident had occurred, and that he had nothing to do with the operations on that day. Clar-

ence Miller, the crane operator, called, as before stated, by plaintiff in her case, testified that on the day of the accident he was working for Fried and not for the defendants, that he had not worked for them after the dissolution of the partnership, that he was paid for the work that he did after January 14th by Fried, that prior to the dissolution Louis Cohn had charge of the work, that after the accident he resumed work for Cohn, running the crane, but he did not do so until the following Sunday, that he did not see Louis Cohn at the scene of the operations on the day of the accident until after it occurred, that he was paid for the work he did after the 14th and on the day of the accident by Herbert Greaves; that Louis Cohn gave him no orders after the 14th, but that after that he received his orders from Greaves and Fried; that he worked on Sunday, the day of the accident, at the request of Fried. He explained the circumstance that he had stated in an affidavit before the coroner on January 20th, "I am employed by A. H. Cohn & Son of Glassport, Pa., as a crane man," by the statement that he thought this referred to the date of the affidavit and not to the date of the accident.

Against this written and oral evidence and constituting the only testimony on which the trial judge permitted the jury to pass upon the question as to whether Miller in operating the crane was defendants' agent and employee and to find that he was, is the testimony of two men, Joseph Krandel and John Galovich, who said they were working at the plant on the day of the accident, having been hired by Louis Cohn, Krandel on January 1st and Galovich about the same time. Krandel said he was paid by Cohn by check for the first two weeks (which would be up to January 14th) and thereafter by Greaves in cash. He further said that on the day of the accident Greaves was the foreman who directed him as to his work and that Louis Cohn was not there in the morning; afterwards, however, he said he came about nine o'clock and told him to pile up some rails and throw them in the

bucket and also to put some coal on the fire. These are the only circumstances to which he testified which have any bearing whatever on the question under consideration, that of the agency of the operator of the crane. In themselves, they are not sufficient to show it. When his whole testimony is read it is most indefinite and uncertain of understanding due to the fact apparently that his use of English was limited. Galovich testified that on the day of the accident "Louis called me that I should throw coal into the crane"; in answer to the question "Louis who?" he answered "I don't know his other name." He could not identify him in the court room. Whether Louis Cohn was present in the court room does not appear, although he thereafter testified as a witness. Even admitting that the person he had reference to was Louis Cohn, this indefinite statement could not establish the fact of agency nor did it and Krandel's together. More would have to be shown than that Louis Cohn was at the plant.

The court below dismissed the testimony of Miller, the crane operator, by drawing the inference that his affidavit before the coroner negatived his statement on the witness stand as to whom he was employed by at the time of the accident. When his explanation of the statement in the affidavit is taken into account, there is no conflict between what he said then and on the stand.

The burden was on plaintiff to establish that the person in charge of the crane was defendants' servant: Orluske v. Nash Pittsburgh Motors Co., 286 Pa. 170; Luckett v. Reighard, 248 Pa. 24, 31; Lotz v. Hanlon, 217 Pa. 339. This she has failed to do; indeed, in her own case, she showed he was not.

Plaintiff places before us the rule that the fact and scope of agency are for the jury where the fact and scope are to be proved by parol testimony and circumstances attending the transaction, citing Humbert v. Meyers, 279 Pa. 171; American Car & Foundry Co. v. Alexandria Water Co., 218 Pa. 542; Singer Mfg. Co. v. Christian,

211 Pa. 534. The rule, however, can be applied only when the testimony is sufficient to establish the fact and here it is not.

Appellee, to sustain her position that the question of agency was for the jury, largely relies on Hartig v. American Ice Co., 290 Pa. 21. In that case the matter in dispute was the ownership of an automobile and the employment of its operator who caused the injury to the plaintiff. There the very important factor of the presumptions as to ownership and engagement on the owner's business arising from the circumstance that the vehicle was one used for business purposes and bore the name of the defendant thereon, entered largely into the determination which was reached. We pointed out that where there is unattacked documentary evidence which relieves defendant from liability it will not be imputed to him. In the case at bar the documentary evidence shows that defendants' connection with the partnership had ceased at the time of the accident and while it is true they continued to be owners of the crane, Miller's testimony and all the other evidence in the case, with the exception of the vague statements of Krandel and Galovich, show that, at the time of the death of plaintiff's decedent, it was not being operated by defendants or by their employee, but by Fried & Mann, who had engaged Miller to operate it for them. No finding to the contrary could safely rest on the testimony of Krandel and Galovich.

Plaintiff's husband had purchased one of the buildings composing the plant which was being dismantled and was engaged in removing the materials composing it. The wreckage of the building caught fire and he was endeavoring to quench it, first by using water from the crane, and, when no more was available there, he went to the river to obtain it and, in returning with two buckets of water in his hands, passed under or near the crane and the bucket fell, due, it is alleged, to the clamps giving way, causing his death. It was shown in plaintiff's case

by the operator of the crane that he had inspected the clamps on the morning of the accident and that they were tight. The bucket was not being used at the time it fell; its operation had ceased for the day. There is no evidence that the clamps had slipped before on that morning after the inspection and the duty which the expert called by plaintiff said should be performed to inspect them every morning had been complied with. Galovich, plaintiff's witness, in describing the accident which he saw, said the bucket had been hoisted on the crane "and the wind was swaying it, and the bucket and all fell off." Under this state of facts there would be no liability, as defendants would not be responsible for the dislodging of the bucket by the wind unless there was something to show that this was a danger they should have anticipated and guarded against. Nothing was shown which would put defendants upon warning that there was danger that the bucket would fall. We said in the case of falling objects the "proof necessary to establish negligence under certain circumstances need be very slight" (Dougherty v. P. R. T. Co., 257 Pa. 118) but in that case there was evidence of the flopping of the trolley wire and of the tendency of trolley poles to leave the wires and become caught in cross wires at intersections, causing them to fall, and in Murray v. Frick, 277 Pa. 190, where the same language was repeated, it was shown that if the window screen which fell had been properly secured it could not have fallen and that other screens in the building were improperly fastened. It is true there was testimony in the instant case that the clamps might slip but this could be said of almost any machine subject to strain, that something about it might slip. We fail to see any actionable negligence in what was here shown and think it would extend the rule of responsibility to unwarranted lengths and make it virtually that of res ipsa loquitur to sustain a recovery under the facts as here shown: Joyce v. Black, 226 Pa. 408; Laing v. Remington Arms Co., 264 Pa. 130; Direnzo v. Pittsburgh

Bridge & Iron Works, 265 Pa. 561; Zeher v. Pittsburgh, 279 Pa. 168; Wolk v. Pittsburgh Hotels Co., 284 Pa. 545. The mere fact that the crane had been used on that morning to lift heavy loads could not fix defendants with liability, that was its purpose and the use to which it was adapted. It could not properly be held that every time the crane raised a heavy load it had to be inspected as appellee apparently contends.

On both the grounds discussed, plaintiff failed to make out her case.

The judgment is reversed and here entered for defendant.