Freas *v.* Guber et al., Appellants.

Argued October 7, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Desmond J. McTighe,* with him *Duffy, McTighe & McElhone,* for appellants.

*Julian W. Barnard,* with him *David B. Fitzgerald,* for appellee.

OPINION BY ERVIN, J., November 16, 1955:

This is an appeal from a final judgment entered upon a verdict of the jury for the plaintiff in an action of trespass, the defendants' motion for judgment non obstante veredicto having been overruled.

Considering, as we are obliged to do in a matter of this kind, *Miller v. Hickey,* 368 Pa. 317, 324, 81 A. 2d 910, the testimony in the light most favorable to the plaintiff and resolving all reasonable inferences and conflicts in the testimony in her favor, the facts are as follows: plaintiff, a widow 71 years of age, had been employed by defendants as a domestic servant about one and a half years prior to the accident. Her duties consisted of doing light housework, taking care of the defendants' two children, ages six and seven years, and going down to the cellar and turning on the heat as occasion required. On March 31, 1953, at about 8:30 a.m., while the defendants and their children were on the second floor, the plaintiff undertook to go down

to the cellar to turn on the heat. There was a door opening from the kitchen to the cellar stairway. From the kitchen door there were some spiral steps that curved to a landing. From the landing the steps went straight down to the cellar floor and there was no handrail. From the landing there is a doorway that opens to the outside and it was light outside. The stairway was "perfectly light" from the natural daylight coming through the cellar windows and through the glass in the door at the landing and through the kitchen door and also from the electric lights in the basement. The plaintiff testified: ". . . it was perfectly light so I could see to go down." Plaintiff got to the landing safely. She was on the landing when she saw a lot of clothes on the right side of the steps leading from the landing to the cellar. The left side appeared to be clear. Plaintiff started down from the landing and when she stepped off the landing (her other foot had not gotten off the landing) she slipped and slid down to the cellar floor. She crawled up the steps on her hands and knees. She then testified: "Q. All right. Now, as you crawled up, you crawled past the place where you had slipped, did you? A. Yes. The clothes were all slippery, of course, and naturally—Q. Did you find or discover any particular clothing there where you had slipped? A. Well, I couldn't just say. It looked like a silk slip that I slipped on, but I couldn't just say definitely, because the place was clear, and when I went to go down, naturally when I came up was —I was pulling myself up by my hands and knees— Q. You say it looked like a silk slip? . . . Q. You said you did see what looked like a silk slip? A. Yes. . . . BY THE COURT: Q. Did you say you saw a silk slip? A. Yes. . . . BY MR. BARNARD: Q. What was the color of that silk slip? A. It was a dark slip. It looked like a black slip. Of course, there were so many clothes

there I couldn't just tell whether it was that I slipped on. There was quite a few clothes there, and when I pulled myself up, of course, I pulled the clothes with me, too. Q. Are you definitely certain that you did slip? A. Oh, yes, indeed. I am sure of that." Plaintiff had never seen clothes on the steps before. The stairway was wood. The treads were never slippery. There was a laundry chute leading to a bin in the cellar for the storage of soiled clothing. Clothes can be placed in the chute from two points, a bedroom on the second floor and the breakfast room on the first floor. The plaintiff testified that the children never handled the clothes and that Mrs. Guber did the laundry except the bedding and the towels, which were sent out to a laundry. At the time plaintiff fell she was wearing bedroom slippers and suffering from arthritis. She did not move any of the clothes on the stairway with her hand or push them aside with her feet. While the plaintiff did not directly say that she slipped upon a silk slip, the inference might be drawn that she did. The plaintiff then had the burden of proving that the defendant placed the slip upon the step. She could do this either by direct or circumstantial evidence. She relied upon the circumstances that plaintiff never handled any laundry, that the two small children never handled laundry, that the only one in the household who handled laundry was the wife defendant and that there was no one else in the household except the two defendants, their two small children and the plaintiff.

In *Mitchell v. Scharf*, 179 Pa. Superior Ct. 220, 223, 224, 225 and 226, 115 A. 2d 774, this Court recently said: "The doctrine of exclusive control, since its inception in Pennsylvania in the case of Shafer v. Lacock, Hawthorn & Co., 168 Pa. 497, 504, 32 A. 44, has had a varied and somewhat unpredictable treatment by our courts. This has led to some confusion concerning

its application. Mr. Justice BELL discusses very thoroughly its history and application in our courts in his concurring majority opinion in the case of Kotal v. Goldberg, 375 Pa. 397, 100 A. 2d 630, concluding, as the Supreme Court did in Miller v. Hickey, supra, 368 Pa. 317, 81 A. 2d 910, at page 331, that great care should be exercised to limit its application to exceptional cases 'where the evidence of the cause of the accident is not equally available to both parties but is peculiarly or exclusively accessible to and within the possession of the defendant'. . . .

"It is, of course, the rule in negligence cases that the plaintiff must establish a prima facie case of negligence and causation. The doctrine of exclusive control is an exception to this principle, and its effect is to shift to the defendant the burden of disproving negligence by a satisfactory explanation. In essence it goes contrary to the settled rule that the mere happening of an accident raises no presumption of negligence. Its application, therefore, should be watched carefully by our courts. As Mr. Justice BELL points out in the *Kotal* case, it cannot be applied literally, for if it were, it would fit almost every case of negligence. It was never intended to have so broad an application. Rather, it is a doctrine which justice requires to be applied in exceptional and unusual cases where the plaintiff is placed at a great disadvantage by the fact that the thing causing the injury is under the exclusive control of the defendant and the evidence is within the latter's exclusive possession or access.

"*Exclusive* control means something more than that the object be owned by the defendant. . . .

"The mere difficulty of obtaining evidence is not the criterion for application of the doctrine. Also, the accident must be of such nature that it would not ordinarily happen unless defendant is negligent. This does

not mean that *one of the possible causes* of the accident could be defendant's negligence. Rather, it contemplates that examining the accident in the light of human experience it is one which occurs almost invariably because of a defendant's negligence."

The doctrine has been applied in such cases as *Durning v. Hyman,* 286 Pa. 376, 133 A. 568, where a seat in a theater gave way; *Rozumailski v. Phila. Coca-Cola Bottling Co.,* 296 Pa. 114, 145 A. 700, where a coca-cola bottle exploded; *Saganowich v. Hachikian,* 348 Pa. 313, 35 A. 2d 343, where the plug of an iron drum containing liquid caustic soda suddenly shot out; *Loch v. Confair,* 372 Pa. 212, 93 A. 2d 451, where a ginger ale bottle exploded; *Dillon v. William S. Scull Co.,* 164 Pa. Superior Ct. 365, 64 A. 2d 525 (allocatur refused), where a coffee jar exploded; *Mack v. Reading Co.,* 173 Pa. Superior Ct. 296, 98 A. 2d 399, affirmed 377 Pa. 135, 103 A. 2d 749, where a steel coupler fell from a moving train at a grade crossing; and *Miller v. Meadville Food Service, Inc.,* 173 Pa. Superior Ct. 357, 98 A. 2d 452 (allocatur refused), where a pie contained a foreign substance.

We are of the opinion that the doctrine of exclusive control does not apply to this case for a number of reasons. At the very outset it is apparent that the wife defendant did not have exclusive control of the cellar steps. Her two children, aged six and seven years, were in the house and could have thrown the clothing upon the steps and if they did this as a prank and not as agent for their parents, there would be no liability upon the parents.

Furthermore, this is not a case "where the evidence of the cause of the accident is not equally available to both parties but is peculiarly or exclusively accessible to and within the possession of the defendant." Nor is this a case where the accident would not ordinarily

happen unless the defendant is negligent. It could just as well have happened because of the negligence of either one or both of the children.

When a party who has the burden of proof relies upon circumstantial evidence and inferences therefrom, such inferences, in order to prevail, must not only be reasonably deducible from that evidence but must be so conclusive as to exclude any other reasonable inference or deduction inconsistent therewith. *De Reeder v. Travelers Ins. Co.*, 329 Pa. 328, 334, 198 A. 45; *Norris v. Phila. Electric Co.*, 334 Pa. 161, 165, 5 A. 2d 114; *Sharble v. Kuehnle-Wilson, Inc.*, 359 Pa. 494, 500, 501, 59 A. 2d 58; *Polk v. Steel Workers Organizing Com.*, 360 Pa. 631, 634, 62 A. 2d 850; *Wagner v. Somerset Co. Memorial Park*, 372 Pa. 338, 341, 342, 93 A. 2d 440.

The evidence in the present case did not exclude the reasonable inference that either one or both of the children placed the clothing upon the cellar steps. The throwing of clothing upon the cellar steps would seem more likely to have resulted from a young child's prank than from the act of an adult, particularly in view of the fact that a clothes chute existed for transferring the clothing from either the second or first floor to the basement of the defendants' house.

In addition to failing to present adequate evidence of the defendants' negligence, the plaintiff was contributorily negligent. She was aware of the presence of clothing upon the cellar steps. It appeared to her that the left side of the steps was free from clothing and she endeavored to descend on that side. If the left side of the step where she placed her foot was free from clothing, then she must have fallen for some other reason and the defendants' alleged negligence could not have been a causative factor. If, on the other hand, she actually stepped upon clothing, why did she do so?

Would not a reasonably prudent person have picked up the clothing and taken it to the cellar or at least have pushed it aside? To step upon clothing which one knows to be upon the cellar steps would amount to the testing of a known danger and particularly would this be so by one wearing bedroom slippers and suffering from arthritis. It is true that the question of contributory negligence cannot be treated as one of law unless the facts and inferences from them are free from doubt. *Caleodis v. Monessen,* 377 Pa. 511, 105 A. 2d 150. In our opinion this was such a case.

Judgment reversed and here entered for the defendants.