## Stewart *v.* Morow, Appellant.

Argued March 14, 1961. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Charles G. Notari,* for appellants.

*Gene K. Lynch,* with him *Leonard J. Paletta,* and *McArdle, Harrington & McLaughlin,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, May 2, 1961:

Plaintiff, Irene Stewart, was employed one day a week as a domestic worker in the Penn Township, Allegheny County, home of the defendants, Joseph and Marietta Morow, and had been so employed for at least six months prior to an accident which occurred on May 25, 1954. On that morning while in the performance of her household cleaning duties, Irene Stewart was injured when a mirror which had been resting on the mantelpiece in Morow's living room suddenly fell and struck her on the head, whereupon it broke and cut her right arm and hand. The jury verdicts were against the Morows, Irene Stewart being awarded $7,320, and her husband, Ray Stewart, $680. From judgments entered on such verdicts the Morows appeal seeking judgments non obstante veredicto or a new trial.

Morows were given this mirror (which was at one time a part of a vanity set) by a neighbor, Mrs. Pusateri, sometime between November 1953 and January 1954. The mirror is described as very thin and oval shaped except for the bottom portion thereof which was straight or level. Referred to as a large mirror, Irene Stewart testified that it was not very heavy, whereas Mr. Morow estimated its weight at twenty-five pounds.

The Morows placed the mirror on a cement mantelpiece in their living room, behind an electric clock, with the straight or level portion resting on the mantel and the top oval part leaning against the flat surface of the wall. It was not secured or fastened to the wall in any other manner. The mirror had rested and remained in this position for about two or three weeks prior to the accident.

On the morning of the accident, Irene Stewart was cleaning about the living room. She had just picked up some candy wrappers from the fireplace and was rising from her bent-over position when she was suddenly struck, without warning, by the falling mirror. She testified that a week or so before the accident she had cleaned the wall behind the mirror, and at that time observed that the mirror was not fastened to the wall. She informed Mrs. Morow of this fact, stating that "somebody's going to get killed if that mirror falls." She had not, however, touched the mantelpiece or the mirror on the morning of the accident. Irene Stewart was the sole witness as to liability and this was the extent of her evidence.

We have here a case where there is merely proof of the fall of an object without any proof of what caused it to fall: *Laing v. Remington Arms Co.,* 264 Pa. 130, 131, 107 A. 633. The only evidence of record even tending to show negligence is the fact that the mirror was not fastened or secured to the wall and that it fell. There is no evidence that the position of the mirror, i.e., leaning against the wall, made it unsafe or that it was insecure, nor is there any evidence that in that position the mirror was dangerous, i.e., likely to fall, either because it was topheavy or because it was placed at such an angle that vibrations or jarring would cause it to topple over or slide off the mantel. Indeed, the record does not disclose whether the mirror toppled or slid, nor was there any evidence offered of

vibrations or jarring or any other causative factor to explain the sudden fall of this mirror which had rested safely on the mantelpiece for three to four weeks prior to the accident.

It is a fundamental rule in negligence cases that the plaintiff to recover must establish a *prima facie* case of negligence and causation (*Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A. 2d 573; *Freas r. Guber*, 180 Pa. Superior Ct. 9, 13, 117 A. 2d 814), and the fact that an injury is sustained as a result of a falling object does not relieve the plaintiff of this burden of proof. The doctrine of exclusive control is no aid to the present plaintiff in this task since it is not applicable to the instant case for the simple reason that the evidence of the cause of the accident is equally available to both parties and is not peculiarly or exclusively accessible to and within the possession of the Morows: *Miller v. Hickey*, 368 Pa. 317, 331, 81 A. 2d 910; *Mitchell v. Scharf*, 179 Pa. Superior Ct. 220, 224, 115 A. 2d 774. Nor does the doctrine of res ipsa loquitur apply to cases in which a plaintiff is injured, as here, by a falling object: *Doerr v. Rand's*, 340 Pa. 183, 185, 16 A. 2d 377; *Bisson v. John B. Kelly, Inc.*, 314 Pa. 99, 102, 170 A. 139; *Pope v. Reading Co.*, 304 Pa. 326, 331, 156 A. 106. It was, therefore, encumbent upon Irene Stewart to produce *some* evidence, either factual or circumstantial, from which negligence on the part of the Morows might be legitimately and reasonably inferred: *Doerr v. Rand's*, supra; *Pope v. Reading Co.*, supra. The instant record is devoid of any such evidence from which negligence may be so inferred.

We have said that in cases of falling objects the proof necessary to establish negligence under the circumstances need be very slight: *Rucinski v. Cohn*, 297 Pa. 105, 114, 146 A. 445; *Dougherty v. Phila. Rapid Transit Co.*, 257 Pa. 118, 124, 101 A. 344; *Murray v. Frick*, 277 Pa. 190, 193, 121 A. 47. A review of these

cases demonstrates, however, that more evidence was offered therein than the mere fall of the object. The present state of the record leaves any determination of the negligence and the causative factor to speculation and conjecture and that is not permissible: *Simko v. Bell Telephone Co. of Pennsylvania*, 317 Pa. 539, 541, 177 A. 818; *Direnzo v. Pittsburgh Bridge and Iron Works*, 265 Pa. 561, 563, 109 A. 279; *Laing v. Remington Arms Co.*, supra.

It was encumbent upon Irene Stewart to produce more evidence than the mere fall of the mirror. No legitimate inference of negligence can be drawn from this fact per se, unless we would make an occupant of a home an insurer of the safety of a domestic worker therein and liable for every accident that may occur. That is not the law: *Mitchell v. Scharf*, supra.

Judgments reversed.

––––––––––

Concurring Opinion by Mr. Justice Cohen:

This case and the recently decided *Groner v. Hedrick*, 403 Pa. 148, 169 A. 2d 302 (1961), demonstrate the inconsistencies that occur when faithful judicial interpretation gives way to sympathetic action. In the *Groner* case, even though the plaintiff admitted she knew of the danger, the majority opined, "We think that it was for the jury to say whether plaintiff, *under the economic pressure of the job,* had knowledge of the facts and understanding of the risks. . . ." (Emphasis supplied). The domestic employee in the instant case was under the same "economic pressure of the job" as the domestic employee in the *Groner* case. In *Groner* the majority allowed recovery—here, it is denied. Apparently the majority's standard is attuned to their personal sympathies. Personally, I prefer that the basis of granting or denying recovery should be more scientifically determined.

Years ago by constitutional amendment and legislative action we enacted The Pennsylvania Workmen's Compensation Act which provided a method of adjudicating rights arising from injuries suffered in the course of employment, recognizing that the established law provided no recovery. Perhaps The Pennsylvania Workmen's Compensation Act should be extended to domestic employees. That is much better than having our basic legal concepts distorted by such unscientific measuring rods as the "economic pressure of the job."

Here, as in *Groner,* the domestic employee admittedly knew of the danger. Here, as in *Groner,* having continued to work with full knowledge of the exposed danger, there should be no recovery since the duty owed by the employer to the employee had been acquitted. That there was an improper recovery in *Groner* is no reason to continue the legal distortion. Hence, I concur.