Stephen ANDRASKO and Elizabeth Andrasko, Appellants,

v.

CHAMBERLAIN MANUFACTURING CORPORATION.

No. 78–2350.

United States Court of Appeals, Third Circuit.

Argued Sept. 5, 1979.

Decided Oct. 22, 1979.

As Amended Oct. 26, 1979.

Thomas J. Foley, Jr. (argued), Rosser, McDonald, Marcus & Foley, Ralph J. Iori, Jr., Scranton, Pa., for appellants.

Howard A. Berman (argued), Silverblatt & Townend, Wilkes-Barre, Pa., for appellee.

Before SEITZ, Chief Judge, and GIBBONS and SLOVITER, Circuit Judges.

## OPINION OF COURT

SLOVITER, Circuit Judge.

Appellants, Stephen Andrasko and his wife, appeal from the entry of judgment for defendant which the trial court directed to be entered on the basis of the jury's answers to special questions in a diversity case tried under Pennsylvania law. Stephen Andrasko, a project supervisor employed by the Raymond R. Hedden Construction Co., was injured on May 8, 1974 while working on the premises of the United States Army Ammunition Plant located in Scranton, Pennsylvania. The premises were under the control of Chamberlain Manufacturing Co., the appellee, which operated the plant under a contract with the Department of the Army.

The injury occurred when some steel plating owned by defendant which had been stacked along the side of one of the buildings of the plant fell on Andrasko after he handled it as he attempted to measure the thickness of the short front sheet. There was conflicting testimony as to the presence of any sign on the plating which could be considered a warning.

The case was tried before a jury from May 11 to May 17, 1978. The court submitted the issue of liability to the jury by special verdict questions pursuant to Rule 49(a) of the Federal Rules of Civil Procedure. The questions answered by the jury were:

1. Indicate by a check-mark Mr. Andrasko's status when he was struck by the steel plates stacked in front of the heat treatment plant on May 8, 1974:
Answer: Business invitee.

2. Did Chamberlain, by stacking the steel plates in front of the heat treatment plant or permitting them to remain so stacked, breach its duty to keep its premises in a reasonably safe condition or breach its duty to exercise reasonable care to discover the negligent acts of third persons?
Answer: Yes.

3. If your answer to the previous question is yes, did Chamberlain breach its

duty to warn Mr. Andrasko of the danger which was presented by the steel plates?
Answer: No.

9. Was Mr. Andrasko's conduct with respect to the steel plates on May 8, 1974 negligent?
Answer: No.

11. Did Mr. Andrasko assume the risk of danger to him, if any, which was presented by the condition of the steel plates on May 8, 1974?
Answer: No.

The Andraskos alleged that the jury's responses to the questions were inconsistent and requested that the case be returned to the jury for further deliberation to answer the special verdict question on causation. The district court interpreted the jury's answers to mean that Chamberlain had satisfied its legal duty as a landowner, and directed the entry of judgment for defendant. The court also denied the Andraskos' motion for a new trial, based, *inter alia,* on the alleged inconsistency of the answers and the insufficiency of the evidence with regard to the key issue of the presence of adequate warning.

The district court appropriately held that the relevant duty owed by Chamberlain as a landowner to Mr. Andrasko as a business visitor is governed by the Pennsylvania decision in *Crotty v. Reading Industries,* 237 Pa.Super. 1, 8, 345 A.2d 259, 263 (1975), where the court said:

> The occupier of the premises ordinarily owes the business visitor "not only the duty not to injure him by unreasonably dangerous conduct while he is upon the premises, but also the affirmative duty to use reasonable care to discover unreasonably dangerous conditions of the premises and either put the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation or warn him of the danger."

Thus, under Pennsylvania law recovery against a landowner requires proof of two elements: (1) negligence of the landowner in failing to keep the premises in a

reasonably safe condition (covered in this case by question No. 2) *and* (2) failure *either* to put the premises in a reasonably safe condition (also covered by question No. 2) *or* failure to warn business invitees of the danger (covered in this case by question No. 3). The jury's response to question No. 2 indicates that it found Chamberlain failed to keep the premises in a reasonably safe condition. Since it failed to remedy that situation, it follows that the only way in which Chamberlain might have discharged its legal duty to Andrasko was by warning him of the danger. The jury's response to question No. 3, that Chamberlain did not breach its duty to warn Andrasko of the danger, could be construed, in the absence of anything further in the case and assuming the evidence was sufficient to support such a finding, to mean that Chamberlain had not violated its duty as a landowner.

However, the injury did in fact occur and it is uncontradicted that it occurred because the steel plates fell on Andrasko. Therefore, we must consider whether it is possible to interpret the jury's responses to questions 9 and 11, that Andrasko was not contributorily negligent in his conduct with respect to the steel plates and that he did not assume the risk of danger to him, as consistent with its response to question No. 3 that Chamberlain did not breach its duty to warn.

In this case the court held that the answers to the special verdict questions were not inconsistent. It held that the answer to question No. 3 (Chamberlain did not breach its duty to warn) could be based on either one of two determinations by the jury— that the danger presented by the steel plates was obvious or that Chamberlain warned its business invitees of the danger presented. The court recognized that if the jury believed that the danger was obvious, then the answer to that question would in fact be inconsistent with the jury's finding that Andrasko was neither contributorily negligent nor assumed the risk of injury, and, therefore, construed the answer to mean that Chamberlain warned its business invitees of the danger presented by the

steel plates. However, the court failed to discuss whether a finding that Chamberlain warned its business invitees of the danger presented also was inconsistent with the findings that Andrasko was neither contributorily negligent nor assumed the risk.

In *Keegan v. Anchor Inns Inc.,* 606 F.2d 35 (3d Cir. 1979) this court recently described assumption of risk and contributory negligence as follows:

> Express assumption of risk arises whenever a plaintiff by contract or otherwise expressly agrees to accept a risk of harm arising from the defendant's negligent or reckless behavior. Restatement (Second) of Torts § 496B (1965) . . . Implied assumption of risk is explained as follows:
>
> "A plaintiff *who fully understands a risk* of harm to himself . . . caused by the defendant's conduct or by the condition of the defendant's land or chattels, and who nevertheless *voluntarily chooses to enter* or remain, . . . within the area of that risk, under circumstances that manifest his willingness to accept it, is not entitled to recover for harm within that risk. *Id.* § 496C (emphasis added).
>
> . . . Contributory negligence is "conduct on the part of the plaintiff which falls below the standard to which [the plaintiff] should conform for his own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm." Restatement (Second) of Torts § 463 (1965).

Andrasko's conduct in the face of a warning cannot be distinguished from his conduct if the danger has been obvious, which the trial court recognized was inconsistent with the jury's response to questions 9 and 11. Someone who has been warned of the dangerous condition of the steel plates as stacked and who nevertheless handles them must have acted below the appropriate standard of care. It may be, as the dissent suggests, that there are circumstances under which a plaintiff would not be contributorily negligent when the plaintiff encounters a known danger. However, there is

nothing in the record in this case to indicate that those circumstances were present here. Andrasko had already been advised by one of his laborers who had measured the steel plates that they did not meet the needed specifications. Plaintiff was not in a situation comparable to those of persons who are pushed or meet a sudden emergency and are thereby excused from meeting a known danger. Thus, the jury's finding that Andrasko did not conduct himself below the standard to which he should have conformed for his own protection when he handled the steel plates (no contributory negligence) is incompatible with a finding that plaintiff received a reasonably adequate warning.

Similarly, the jury's finding that plaintiff did not assume the risk must be considered in light of the evidence that Andrasko was a project superintendent presumably experienced with the nature of material on construction sites. We cannot assume that it is so highly unusual that improperly stacked steel plates will tip over from the top if they are handled that such a possibility would be outside the scope of a reasonably adequate warning. Therefore, the jury's finding that Andrasko did not voluntarily subject himself to danger when he handled the plates (no assumption of risk) is also inconsistent with a finding that plaintiff received a reasonably adequate warning.

Appellee suggests that the claimed inconsistency can be resolved on the ground that the occurrence was a pure accident which it argues has been recognized in Pennsylvania in *Stewart v. Morow*, 403 Pa. 459, 170 A.2d 338 (1961) and *DeMarco v. Standard Steel Company*, 247 Pa. 174, 93 A. 285 (1915). In neither of those cases was there any evidence of negligence. Thus, they are distinguishable from the instant situation where the jury found that Chamberlain was negligent in failing to keep the premises in a reasonably safe condition. The Pennsylvania Supreme Court has expressly limited the *Stewart* line of cases to those in which there was no evidence of negligence. *Quinn v. Kumar*, 437 Pa. 268, 272–273, 263 A.2d 458, 461 (1970). In *Doerflinger v. Davis*, 412 Pa. 401, 403, 194 A.2d 897, 898 (1963), the court stated:

While neither res ipsa loquitur nor the exclusive control doctrine applies, we believe that the totality of the aforesaid facts and circumstances amount to evidence of negligence which, though very slight, was sufficient to take the case to the jury. The case is, on its facts, distinguishable from *Stewart v. Morow*, 403 Pa. 459, 170 A.2d 338, where a small mirror, which rested on a mantelpiece in defendant's home, suddenly fell and injured plaintiff (a maid) while she was performing her household cleaning duties. The Court in that case correctly stated (1) that neither res ipsa loquitur nor the exclusive control doctrine applied; and (2) that there was not sufficient evidence of negligence to take the case to the jury.

The difference in the size and potentially dangerous condition of this huge box by the aisle of the store, and the small mirror on a mantel in the Stewart home, together with the other facts and circumstances above mentioned are sufficient to distinguish the *Stewart* case from the instant case.

■ The trial court must attempt to harmonize the jury's answers to interrogatories, if it is possible to do so under a fair reading of them. *Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); *Ratay v. Lincoln National Life Insurance Co.*, 378 F.2d 209, 211 (3d Cir.), *cert. denied*, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967). However, when it is apparent that the interrogatory answers are hopelessly irreconcilable, the case must be remanded. *Guy v. Rudd*, 480 F.2d 677 (3d Cir. 1973). Accordingly, this case will be remanded for a new trial.

Appellants contend that there was insufficient evidence to support a finding, as construed by the district court, that Chamberlain warned its business invitees of the danger presented by the steel plates. The only evidence that there was any warning is the testimony of one witness that he had seen a crayon marking on the plates a few

weeks before the accident which said "Maintenance. Keep your hands off." Appellants argue that these are words of ownership and not a warning of danger. The trial court merely noted that "the meaning of such a warning sign was for the jury." Since this case is being remanded for a new trial, we need merely note that the Restatement describes the type of warning which a possessor must give to an invitee:

> To the invitee the possessor owes . . . the additional duty to exercise reasonable affirmative care to see that the premises are safe for the reception of the visitor, or at least to ascertain the condition of the land, and *to give such warning that the visitor may decide intelligently whether or not to accept the invitation, or may protect himself against the danger if he does accept it.* Restatement (Second) of Torts § 343, comment b (1965). (emphasis added).

Because of our disposition of this case we need not reach the issue raised by counsel for appellants at oral argument regarding the failure of the district court to submit the special verdict questions to counsel before their closing arguments. See *Smith v. Danyo,* 585 F.2d 83 (3d Cir. 1978).

■■ Chamberlain asserts there was insufficient evidence of its negligence to submit the issue to the jury and that the court below erred in failing to grant its motion for a directed verdict. Under Pennsylvania law the proof necessary to establish negligence need be only slight in cases of falling objects. *Quinn v. Kumar,* 437 Pa. at 272, 263 A.2d at 461; *Doerflinger v. Davis, supra; Garber v. Great Atlantic & Pacific Tea Co.,* 397 Pa. 323, 155 A.2d 346 (1959). The steel plates in this case were large, all but one measuring four feet by eight feet, and each weighed approximately 400 pounds. We cannot say that under the Pennsylvania cases cited, stacking of steel plates of such a size against a wall did not provide sufficient evidence of negligence to submit the issue to the jury.

The judgment of the district court will be reversed and the case remanded for a new trial.

SEITZ, Chief Judge, dissenting.

I part company with the majority because I believe that under Pennsylvania law the answers to the pertinent interrogatories are reconcilable.

The jury's answers establish three propositions that we must accept: (1) the defendant maintained an unreasonably dangerous condition, (2) the defendant did not breach its duty to warn plaintiff, either because the danger was obvious or because the defendant actually gave warning, and (3) the plaintiff neither assumed the risk nor was he contributorily negligent. The majority believes that as a matter of Pennsylvania law once there is adequate warning (whether actual or through obviousness), a plaintiff who is injured in the face of that warning *necessarily* either is negligent or assumed the risk of being injured. Thus in the majority's view the answers are inconsistent.

The starting point in any case where it is claimed that answers to special interrogatories are inconsistent is that the court must attempt a fair reconciliation of the answers. *Gallick v. Baltimore & Ohio RR.,* 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963). To do otherwise would encroach on the function of the jury, a practice especially to be avoided in negligence cases, where the jury acts as the repository of the standards of the community. In this case, such a reconciliation must begin with the rules that determine the rights and duties of the parties and the rules allocating the burden of proof on each issue.

The plaintiff bears the burden of persuasion on the defendant's duty to give warning. Although no case directly addresses the point, Pennsylvania law seems to be that the warning is measured by an objective standard in that it must be sufficient to alert a reasonable person as to the danger. The defendant's duty is not to ensure that each particular invitee is in fact warned, but rather that a reasonable person would be warned. *Cf. Debenjak v. Parkway Oil Co.,* 159 Pa.Super. 603, 49 A.2d 521

(1946) (question of whether warning must be given depends on all the circumstances); Restatement (Second) of Torts § 343, comment e (1965) (invitee cannot expect special precautions for his safety). Whether the warning is actual or through obviousness makes no difference. Because this tort is not one of strict liability and the defendant only has the duty of being reasonable, that duty is discharged once there is a warning that is reasonable under the circumstances. *See* 2 F. Harper & F. James, The Law of Torts § 27.13, at 1492 (1956).

As to the defenses of contributory negligence and assumption of risk, the defendant bears the burden of persuasion. Pennsylvania makes a clear distinction between these two defenses: contributory negligence is measured by an objective standard, while assumption of risk is based on a subjective determination. *See Weaver v. Clabaugh,* 255 Pa.Super. 532, 388 A.2d 1094 (1978). Moreover, Pennsylvania is one of an increasing number of jurisdictions that severely restrict the scope of the assumption of risk rule. Not only must the plaintiff have been aware of the danger, he must have fully appreciated its nature and extent. For example, in *Watson v. Zanotti Motor Co.,* 219 Pa.Super. 96, 280 A.2d 670 (1971), the plaintiff was injured while test riding a snowmobile. Reversing a dismissal by demurrer, the court stated: "Even if it may be said that snowmobiles are 'inherently risky' and the danger of ice was 'obvious,' [because of allegations in the complaint] we must assume that appellant did not know this. Thus, he could not have assumed the risk of operating the machine." *Id.* at 99, 280 A.2d at 672. Thus the defendant has a heavy burden of proof on assumption of risk. Moreover, Pennsylvania does apply its strict assumption of risk rule to the invitee

situation. *See Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978).

Turning to this case, the question is whether the rules and the corresponding burdens of proof can be reconciled with the jury's answers to the special interrogatories. This raises two questions. First, assuming reasonably adequate warning, does it follow that the plaintiff necessarily was contributorily negligent? Such cannot be the case for there are many situations in which it is not negligent for the plaintiff to knowingly encounter a danger negligently maintained by the defendant. The test is whether the plaintiff was reasonable under all the circumstances. *See* 2 F. Harper & F. James, The Law of Torts § 27.13, at 1496–97 (1956).

Second, again assuming adequate warning, does it follow that plaintiff necessarily assumed the risk? The majority seems to believe that the warning required of the defendant is of such a nature that it necessarily informed the plaintiff as to each bit of information required by the assumption of risk rule. But because the defendant's duty to warn is tested by an objective standard while plaintiff's assumption of risk is subjective, there is an area between the two rules where the defendant satisfies its duty yet the plaintiff does not fully appreciate the nature and extent of the risk.[1] The strictness of the assumption of risk doctrine in Pennsylvania means that a warning that suffices as to an invitee may not provide the invitee with all the information necessary for him to voluntarily and intelligently assume the risk. The answer of the jury finding no assumption of risk simply means that the defendant failed to carry its heavy burden of proof.[2] It does not follow that

---

1. In the usual case, once there is a finding that the defendant did not breach any duty, that is the end of the matter. Thus in this case, it would have been preferable for the district court to have included in the interrogatories a statement that if the jury decided that defendant had not breached its duty to warn, then the jury should not answer the remaining questions. *See Guy v. Rudd,* 480 F.2d 677, 680 (3d Cir. 1973).

2. The district court gave this charge to the jury:

    To find that Mr. Andrasko assumed this risk Chamberlain must establish by a preponderance of the evidence that Mr. Andrasko knew of the specific risk that the steel plates stacked as they were constituted a danger to himself, and that he voluntarily exposed himself to that danger. The standard to be used is a subjective one, involving the determina-

because the warning, however, given, was reasonable, then plaintiff fully appreciated the exact extent and nature of the danger.

Thus given the district court's instructions, *see* note 2, *supra,* I do not find an inconsistency requiring reversal. Although the jury believed that the defendant did not breach its duty to warn, it also could have believed both that the plaintiff acted in an objectively reasonable manner and that at the same time he did not fully comprehend the exact extent of the danger posed by the metal sheets. There was evidence at trial that these sheets commonly were stacked all over the site without falling over. Indeed, another employee had measured the sheets involved here without mishap and reported the results to the plaintiff. Moreover, the sheets were needed to repair a faulty pillar in danger of collapsing on the plaintiff's work site, making the need for measurement rather urgent. Finally, plaintiff, the only eyewitness to the event, testified that he was careful and that the sheets seemed safe to him. The jury could have inferred from these facts that plaintiff acted reasonably in the circumstances. They also could have believed that the plaintiff was unaware of the precise danger in this case, an inference buttressed by the prior measurement by another employee. When metal sheets lean against the wall, the more obvious danger may be that the bottom may slide out away from the wall. Here, the top tipped over, and the jury could have thought that the plaintiff did not anticipate that particular risk. *Cf. Carr v. Pacific Telephone Co.,* 26 Cal.App.3d 537, 103 Cal. Rptr. 120 (1972) (plaintiff hurt while working on tree that fell on electrical wire; wire threw tree up in air, which then landed on plaintiff; held: even though plaintiff was aware that the activity was generally dangerous, there was no assumption of risk because the plaintiff was unaware that this specific event might happen).

Because the jury's answers are fairly reconcilable on this record, I would affirm the judgment of the district court.

---

tion of what Mr. Andrasko, in fact, saw, knew, understood and appreciated. You may take into account Mr. Andrasko's prior experience and his knowledge concerning steel plates stacked in the manner similar to the ones which fell on him. Mr. Andrasko's testimony as to what he actually knew, understood or appreciated with respect to these steel plates is evidence that may be considered by you.