Rice et al., Appellants, *v.* Kring.

Argued January 9, 1933. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Truman D. Wade,* for appellant, cited: Liptake v. Kurrie, 244 Pa. 117; Rummell v. Dilworth, Porter & Co., 111 Pa. 343; Lamb v. R. R., 259 Pa. 536.

*Ernest Harvey,* of *Holding & Harvey,* for appellee.—A boy of fifteen and one-half years of age is legally presumed of sufficient capacity to be sensible of danger and to have the power to avoid it: Hunt v. Graham, 15 Pa. Superior Ct. 42; Gress v. P. & R. Ry. Co., 228 Pa. 482; Kehler v. Schwenk, 144 Pa. 348; Greenway v. Conroy, 160 Pa. 185; Parker v. Washington Elec. St. Ry. Co., 207 Pa. 438; Dynes v. Bromley, 208 Pa. 633; Sheetram v. Stave & Lumber Co., 13 Pa. Superior Ct. 219.

No instructions or warning were necessary from the defendant to the plaintiff as to a danger which was plainly open and obvious to anyone: Vault v. Roelofs, 217 Pa. 535; Welsh v. Butz, 202 Pa. 59; Levy v. Rosenblatt, 21 Pa. 543.

A court cannot accept as true that which the indisputable evidence demonstrates as false: Lessig v. Transit & Light Co., 270 Pa. 299; Miller v. R. R., 257 Pa. 517.

OPINION BY MR. JUSTICE SIMPSON, March 20, 1933:

W. Scott Rice, a minor, by his father and next friend, and the father in his own right, sued the defendant to

recover damages for alleged negligence, resulting in injuries to the minor while working on a tractor-driven threshing machine, belonging to a third party but then being operated for defendant. The trial judge entered a nonsuit, the court in banc refused to set it aside, and plaintiffs appeal.

The father and defendant occupied and cultivated adjoining farms in Chester County. The relation between them was in a high degree neighborly, each helping the other as need required, but without compensation for so doing. Some four days before the minor was injured, defendant assisted the father in threshing his grain with this same machine. After that work was finished, the machine was moved from the father's barn to that of defendant, and was set in place by its owner, in order to thresh defendant's grain. It then rested on the floor of the barn, a short distance from the mow containing the sheaves of wheat which were to be threshed. Alongside of the machine and attached thereto was a wooden table, which ran on an incline from one end of the machine to an opening in it near the other end, through which opening the sheaves of grain were run into the machinery which threshed them. Above this table and attached to it, but a little farther from the body of the machine and nearer to the mow, was a false table. It was six feet high, forty-seven inches long, and twenty-six inches wide, and, when in place, was parallel with the floor upon which the machine was standing.

There were two ways of feeding the machine. In one, some one standing on the top of the adjoining mow threw the sheaves down. Some of them landed on the false table, and some fell to the floor of the barn, but, in either event, they were then placed by another workman within reach of the operator who was feeding the machine. This was the plan followed when the minor's father was threshing his grain. When the other plan was pursued, one employee, standing on the false table, would pull the sheaves out of the mow at what is known

as a "pitch hole," located in the mow at a convenient point, and would place them where they could readily be reached by the operator who was feeding the machine. This was the plan in operation when the minor was hurt. It was shown that it was not as safe a way as the other.

A few days before the accident, the father, learning that defendant was about to proceed with his threshing, called upon the latter and inquired whether or not he, the father, could assist in doing that work. After some conversation, it was agreed that the minor should be sent to help, and on the morning of the accident he was so sent. At that time the boy was sixteen and one-half years old, five feet ten inches tall, and weighed about one hundred and forty pounds. He was in every respect of at least normal mentality, and, except when at school, worked on his father's and the neighboring farms, at times assisting in the threshing then being done. He was acquainted, in a general way, with the threshing machine, had worked on it or in connection with it on several occasions, but had made no study of it, and apparently had not considered the best way to avoid accidents when so working. Though fully cognizant of the character of the machine and whatever dangers there were in using it, the adult plaintiff said he did not "think it was dangerous for [the minor] to go help about the threshing machine." This did not refer, however, to defendant's way of doing the work; it referred only to having a minor, of the capacity of this boy, working upon and about the machine in doing the threshing then about to be done.

When the minor reached defendant's barn on the morning of the accident, he found that the machine was in place and had been in operation for a short while. Defendant was then on the false table, drawing the sheaves out through the "pitch hole" and placing them within reach of the person who was feeding them into the cylinder. Defendant came down from the table and directed the minor to go up on it, and continue the work

which defendant had theretofore been doing. He gave no instructions as to the manner of doing the work, nor any caution regarding the possible danger resulting from its performance, nor did the minor make any inquiries on the subject. Pulling sheaves of wheat from a mow, and placing them where the next person to handle them could readily obtain them, was a simple operation to a normal boy of sixteen and a half years, as well as to an adult, which probably explains why no instructions were given or sought.

Following the direction given to him by defendant, the minor stepped onto a platform used by the feeder of the machine, and from there to the false table, which was located about a foot from the mow, where the sheaves of wheat were stacked. Opposite to this table, and about on a level with the minor, was the "pitch hole," from which some of the sheaves had been drawn, probably by defendant in the performance of the work which the minor was to continue. The latter's first attempt to draw out a sheaf resulted in his getting but a few stalks of wheat. As he made a second and more vigorous attempt, his feet slipped and he fell on his face on the false table, from which he slid to the inclined table, his feet passed into the opening in the cylinder, through which the sheaves were run, and he received the serious injuries of which complaint is made.

In determining whether or not defendant should be made to answer in damages for this unfortunate accident, our first inquiry, in this as in all other cases, is: What was the proximate cause of the injury to the minor? This inquiry does not seek to ascertain which, of the series of events under consideration, caused the greater part of the harm done, as appellants seem to think, but rather what started the chain of events which finally resulted in all the injury sustained? In this case, there is but one possible answer to that question: it was the slipperiness of the false table on which the minor was standing, while pulling the sheaves out of the mow,

and this was due to "loose grains of wheat on the foot board." If he had not then and there slipped, he would not have suffered any physical injury. This is admitted by the minor himself: "Q. What made you slip; how did you come to slip? A. Loose wheat grains on the foot board...... Q. And there were wheat grains on the board that made you slip? You knew that? You knew there were wheat grains on that board? A. Yes. Q. And you knew there was chaff on the board? A. Yes. Q. Because you could see it, couldn't you? A. Yes." He also knew the false table was vibrating with the operation of the machine; his senses told him that. He does not deny that he knew it, and his father testified that "Anybody could see it [the false table] was slippery all the time" when the "wheat and chaff and straw [were] sliding over it," during the operation of the machine. The location of the operator's part of the thresher had no more to do with the proximate cause of the injury, than the floor of the barn would have had, if the minor had fallen from the false table to the floor, and received, perhaps, more serious injuries than those he actually sustained.

Under these circumstances, it is clear that a man could not have recovered for the injuries sustained; no instructions are necessary from an employer to an adult employee, where, as in the instant case, the danger of slipping is necessarily obvious to any one about to proceed with the work: Vant v. Roelefs, 217 Pa. 535. Our question then is: Does that rule apply to the minor plaintiff? The authorities clearly answer this question also.

"At fourteen an infant is presumed to have sufficient capacity and understanding to be sensible of [obvious] danger, and to have the power to avoid it; and this presumption ought to stand until it is overthrown by clear proof of the absence of such discretion and intelligence as is usual with infants of fourteen years of age": Nagle v. Allegheny Valley R. R. Co., 88 Pa. 35, 39-40; Kehler v. Schwenk, 144 Pa. 348, 360; Greenway v. Conroy, 160

Pa. 185. This being so when the minor is fourteen years of age, the presumption must be greater when he is sixteen and a half years old, for "the measure of a child's responsibility is his capacity to see and appreciate danger, and the rule is that, in the absence of clear evidence of the lack of it, he will be held to such measure of discretion as is usual in those of his age and experience. The measure varies, of course, with each additional year." : Kehler v. Schwenk, supra, at page 359. "It follows that as responsibility depends upon the knowledge and experience of the child, and on the character of the danger to which he is exposed, generally the question is one for the jury and not for the court. This must always be so when the facts are in dispute, or the inferences to be drawn from them are doubtful. But in clear cases, where the facts are settled and there can be no reasonable doubt as to the inferences to be drawn, the question may be determined by the court as a matter of law." : Parker v. Street Ry. Co., 207 Pa. 438, 441; Gress v. Phila. & Reading Ry. Co., 228 Pa. 482, 486.

In the present case the danger of slipping was obvious, and there are no facts in dispute. Upon the authorities cited, capacity to recognize such a danger is presumed in a minor of sixteen and a half years, as this boy was, and the burden of proving that it did not exist rests upon him who asserts it. Especially is this so, where, as here, the minor had unquestioned general capacity, and was acquainted with the machine and the work it was doing, though not acquainted with its component parts. No proof was produced or offered to be produced to overcome that presumption, and hence it must be given the same effect as an admitted fact in the case.

The judgments of the court below are affirmed.