Teets *v.* Crescent Portland Cement Company, Appellant.

Argued April 28, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER,

*Carl E. Glock,* with him *Reed, Smith, Shaw & Mc-Clay,* for appellant.

*E. W. Arthur,* for appellee.

OPINION BY CUNNINGHAM, J., July 10, 1936:

Plaintiff has a verdict for $1,250, with judgment thereon, as damages for injuries suffered while assisting in moving a heavy piece of machinery in defendant's cement plant. In this appeal by the defendant a new trial is not sought, but it is earnestly contended that its point for binding instructions should have been affirmed by the trial judge, PATTERSON, J., or its subsequent motion for judgment n. o. v. granted by the court in banc.

By its assignments of error and statement of questions involved, appellant indicates three grounds to be considered in disposing of its contention for judgment in its favor upon the whole record: (a) That appellee was an employee of appellant, with sole right of recovery under the Workmen's Compensation Act of 1915; (b) lack of sufficient evidence of negligence upon the part of appellant to take the case to the jury; and (c) contributory negligence of appellee.

When the testimony is read in the light most favorable to appellee, as it must be upon this appeal, these material facts appear from the record: On September 26, 1932, the appellee was engaged in farming and needed lime as a fertilizer; the appellant cement com-

pany sold lime in the form of flue dust as one of its bi-products. When appellee came to the plant to buy fertilizer a quantity of lime was piled outside but was too lumpy to be used without grinding and appellant's grinder happened to be inside the plant.

Appellant's superintendent, whose authority is not questioned, told appellee that the appellant would supply the grinder and power for its operation if appellee would move the machine from the plant out to the lime pile and do the grinding for one-half of the quantity ground. The appellee accepted these terms, agreed to furnish a truck and two men, move the machine and do the grinding, with the provision that appellant's superintendent would provide a man to supervise the moving and operation of the grinder.

The next morning appellee appeared at the plant with a truck and two men employed by him; the superintendent assigned a foreman to direct the moving of the grinder. To get the grinder out of the building, it had to be moved between two pillars or columns and lifted high enough to pass over a bearing which projected from one of the columns several feet above the floor. The plan was to raise it by means of a block and chains suspended from beams. When appellee and his employees reached the place where the grinder was located they found two five-eighths chains hanging from two "I" beams in the ceiling of the plant and about nineteen feet from the floor. These beams were not directly over the grinder, but at a distance of about ten feet in front of it; the chains were looped together in the form of a swing. Appellant's foreman then produced a chain block with a four-eighth chain attached to it. This chain block was attached to the swing chains, which in turn were looped around the beams in the ceiling, and the other end of the chain was fastened to the grinder. Inasmuch as these chains were not directly over the grinder and as it had to be lifted

up and swung over the bearing, it was necessary to use what is commonly called a snubbing rope. It consisted of a rope in five strands around a pulley and, by direction of the foreman, was first tied to the lowest part of the grinder and then fastened securely to a column about fifteen feet in the rear. The appellee and his employees then began to manipulate the chain block and when the grinder had been raised some inches off the floor the foreman directed appellee to get on the circular table of the grinder and keep the chain on the sprocket of the chain block. He obeyed and was manipulating the chain block from that position while one of his men and a company man were pulling from the floor. In this position appellee had his back to the snubbing rope and could not observe its condition. The operation proceeded and the tension on the chains attached to the beams and the tension on the chain block and the snubbing rope increased as the grinder was raised. When it had been raised to a height of about one foot from the floor, the suspending chain suddenly broke and released the heavy block and tackle which struck and fractured appellee's arm as the grinder fell to the floor.

With this general description of the accident and of the industrial relationship in which the parties then stood, our first inquiry is whether appellee was a "servant" performing services for appellant for a valuable consideration in the regular course of appellant's business, or merely one whose employment was both "casual in character" and outside of "the regular course" of appellant's business?

By sections 103 and 104 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §22, the term "employer" is declared to be synonymous with "master" and the term "employee" is thus defined: "The term 'employee' as used in this act is declared to be synonymous with servant, and includes all natural

persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer, etc."

It is not questioned that appellee's employment was "casual," but it is argued in behalf of appellant that it was in the "regular course" of its business.

We cannot agree with this contention in the light of the testimony as we read it. Walter Rice, superintendent of appellant's plant, while testifying concerning appellee's application to buy lime dust said: "I told him that it was a little late in the fall and the supply was about exhausted of the pulverized material but we did have a quantity of it which was slightly caked—crusted over the top of the pile, and that we had a grinder in what we call the packing house and if he wanted to undertake the job to move the grinder out and furnish a truck to move it over to the lime pile, we would furnish the motor and the power if he furnished the labor to grind the lime ...... Q. Were you short of men at that time? A. Well, we had plenty of men. Q. Why did you ask Mr. Teets to furnish the labor? A. Well, because I didn't think it would pay us to move that machine out there and sort of an experiment. We wouldn't go to the expense to do that for we couldn't realize enough from the lime—enough to do that when the labor was considered."

It seems to us this testimony indicates not only that appellee's employment was casual but also that he was engaged in an experimental and casual operation outside of the regular course of appellant's business—making and selling cement. See *Callihan v. Montgomery*, 272 Pa. 56, 72, 115 A. 889; *Blake v. Wilson*, 268 Pa. 469, 112 A. 126. In our opinion, appellee was not an employee of appellant within the meaning of our Workmen's Compensation Act, but a customer toward whom appellant owed the duty of exercising ordinary care in seeing he was not injured.

The question whether there was sufficient evidence of negligence upon the part of appellant to justify the submission of the case to the jury is not free from difficulty.

Appellee in his statement of claim averred, inter alia, failure to inspect the chains and the use of defective and unsafe appliances, but there was no evidence supporting these allegations; the uncontradicted testimony was to the contrary and showed the break was a clean one. The fourth ground charged was conducting the operation of moving the grinder in a careless and negligent manner.

As we understand appellee's position, he does not rely upon the mere happening of the accident, but contends the circumstances under which it occurred amounted to evidence from which negligence may reasonably be inferred. His argument is that as the operation was under the exclusive management of appellant's foreman and as such an accident does not ordinarily happen if due care be used, there is no fair inference that it could have been produced by any other cause than negligence, *(Zahniser v. Pennsylvania Torpedo Company,* 190 Pa. 350, 42 A. 707); and it is further contended appellant failed to show any other cause to which the accident might with equal fairness be attributed.

More specifically, it is suggested that if appellant's foreman had caused the horizontal snubbing rope to be eased and adjusted from time to time, as ordinary care and prudence dictated, the unusual strain which caused the chain by which the machine was suspended to break would not have been placed upon it.

The testimony for appellant that the grinder had been moved into the plant only four or five days prior to the accident by the use of the same appliances, supplied some affirmative evidence in support of appellee's contention that an accident of the kind in which he was injured does not ordinarily occur when the operation is conducted with due care.

While appellant's duty was not absolute, the circumstances of the accident are practically free from dispute. There was a slight, but immaterial, conflict in the testimony with relation to the management of the snubbing ropes. Paul Lutz, one of appellee's witnesses, said they were tied, by direction of appellant's foreman, around the column with bow-knots and continued: "Q. What, if anything, was done to the snubbing rope? A. *There wasn't anything done to it. It was just tied and kept tied.* Q. What? A. They had it tied to that post and kept it tied. There wasn't anything done to the snubbing rope. ...... Q. What was the condition of the snubbing rope at the time it fell or immediately prior to the time of falling? A. They were stretched very tight, the ropes. They were in good condition but they were stretched very tight." (Italics supplied)

Frank Geiger, the foreman, said it was a "two-three rope" and "we snubbed it a little bit, just far enough so it won't touch the elevator ...... and I had the rope fastened to a column ...... which I will say was twelve feet away from the crusher, and I had it fastened higher to the column than it already was at the bottom of the crusher, I believe." There was, however, no direct statement by this witness that the snubbing rope was manipulated as the grinder was lifted from the floor.

There is a similarity between the present case and that of *Folk v. Schaeffer,* 186 Pa. 253, 40 A. 401. There, the plaintiff was on an elevated platform assisting fellow workmen in raising from the ground, sixty feet below, a hood which was to be placed on the top of a smoke stack; he was injured when a knot in a guy rope became undone or slipped. In the course of the opinion, (p. 255) the court said:

"The work preliminary to hoisting the hood was done under the supervision of one of the defendants,

who gave directions as to the size of the timber to be selected from a pile in the yard, as to the ropes to be used for guys, and who tied the knot which slipped and caused the accident. There was no direct proof of want to care in tying the knot, and the conclusion that it was improperly tied was an inference from the fact that it came untied. Ordinarily an accident would not have happened as this did if care had been exercised in tying the ropes. There was no difficulty in making them secure. Under the circumstances shown by the plaintiff the burden was thrown on the defendants to show that due care had been used, and in the absence of any explanation the jury might infer want of care. The defendants were not bound satisfactorily to explain the cause of the accident, but they were bound to rebut the presumption of negligence arising from the attendant circumstances."

Attention may also be directed to *Maerkle v. Pittsburgh Rys. Co.,* 311 Pa. 517, 165 A. 503, and to the latest reference to the doctrine in *Wright et al. v. Straessley,* 321 Pa. 1, 182 A. 682.

Upon consideration of the whole record, a majority of the members of this court have reached the conclusion quoted by Mr. Justice MAXEY in *Maerkle v. Pittsburgh Rys. Co.,* supra, from *Shafer v. Lacock, Hawthorn & Co.,* 168 Pa. 497, 503, 32 A. 44.—"There are cases in which a fair presumption or inference of negligence arises from the circumstances under which the injury occurred, and this we think is one of them."

The line of reasoning which leads to that conclusion was well expressed in these excerpts from the opinion of the court below supporting its denial of appellant's motion for judgment n. o. v.:

"At the time the accident occurred, the work of moving the machine had been in progress ten to fifteen minutes. The lime-crusher had been raised from the floor. The chain from the block to the crusher was

taut. The snubber rope, extending from the base of the machine to a post about 20 feet away, was also taut and, according to the testimony, was given no attention as the machine rose from the ground, but was 'just tied and kept tied' ......

"The testimony in behalf of plaintiff raises an inference that the tightening of the snubber-rope, as the angle between the horizontal rope and the perpendicular chain widened, caused an excess strain which could have been avoided by proper loosening of the snubbing rope. ......

"It is not unreasonable to say that the snubbing rope, which held the suspended machine well out of perpendicular suspension and caused an angular stress upon the chain, should have been given attention during the operation and either slackened or taken up, as occasion might require. Common sense would indicate that to leave the snubbing rope simply tied where it was, without any attention, would have an effect upon the chain stress. The inference from such method of operation was for the jury. It found defendant's method of operation negligent and plaintiff's injury the result thereof."

As to appellant's contention that appellee was guilty of contributory negligence as a matter of law, it is sufficient to say he testified positively that the foreman told him "to get up on the machine and pull on the chain block." Under the evidence there was nothing obviously dangerous about standing upon the grinder and obeying the instructions of the foreman. We think the question of any contributory negligence upon the part of the appellee was for the jury.

These conclusions require that the assignments be severally overruled.

Judgment affirmed.

BALDRIGE, PARKER and RHODES, JJ., dissent.