## Debenjak *v.* Parkway Oil Company, Appellant.

Argued October 3, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Howard R. Detweiler,* with him *Frank R. Ambler,* for appellant.

*Charles H. Drummond,* with him *Isabel Drummond,* for appellee.

OPINION BY HIRT, J., November 18, 1946:

Plaintiff has judgment on his verdict for damages from personal injury. Defendant in this appeal questions the refusal of the court to enter judgment n. o. v.

in its favor, contending that its negligence has not been established, or that the evidence convicts plaintiff of contributory negligence as a matter of law.

There is little dispute as to the facts. Plaintiff was a painter in the employ of Samuel Richman, who had contracted with defendant to paint its storage tanks and other structures on its premises in Philadelphia. Richman undertook the work as an independent contractor on a cost-plus basis. The work was extensive and what work was to be done was specified and directed from time to time by James S. Baldwin, defendant's "maintenance engineer." The evidence clearly establishes that he was defendant's duly authorized representative. After several months on the job, plaintiff with another workman was assigned to paint a metal "cyclone fence", of link type, which enclosed defendant's premises. Two gates of like construction and material were parts of the fence to be painted. As originally designed and constructed, these gates, when moved across the openings, closed the road to both incoming and outgoing traffic. The gates had been in disuse for a number of years and had been shoved back inside of the fence. Each gate was ten feet high and fourteen feet long, weighing about 400 pounds. Only one of them was in operating order. It was hung by means of a wheel at the top of the outer end on an overhead track. The track was supported by a post in the fence line and by another in the roadway; the latter post also served as a stop for the gate when rolled to a closed position. At the inner end, on the bottom of the gate, an attached wheel rested on a bar which served as a rail, extending along the base of the fence to the opening. Thus suspended on a wheel on the overhead track, and by means of the wheel resting on the rail at the bottom, the gate was opened or closed by sliding it along the tracks. Plaintiff had no difficulty in moving this gate to its full length into the driveway so that it and the part of the fence which it covered could be painted.

The other gate, with which we are concerned, was not in working order. Defendant had widened the part of the roadway which this gate originally had closed and had removed part of the fence, intending at some future time to install a new gate long enough to close the enlarged opening. In the meantime the overhead track for this gate had been removed and the gate had been shoved back along the inside of the fence. The wheel at the bottom of the inner end still rested on the metal rail, but nothing held the gate upright except a post and the fence itself at the end next to the widened roadway. This gate could not be painted in place and plaintiff consulted defendant's representative, Baldwin, who, after examining it, said: "Boys, it's all right to pull this gate out in order to paint it." In the presence of Baldwin and his assistant, plaintiff, according to his testimony, with the aid of his fellow workman pulled the gate into the roadway when the gate either broke loose from, or was pulled off, the end of the rail. In falling to the ground the gate struck plaintiff and injured him severely.

Plaintiff, through Richman, his employer, had the status of a business visitor. Defendant had removed the overhead track and was charged with notice that there was no stop or other device to prevent the gate from being pulled off the end of the bottom track between the post and the fence, which normally held the gate in an upright position. The gate had to be moved so that it and the fence, which it covered, could be painted, and with knowledge of this defect defendant was bound to warn plaintiff of it. Since plaintiff was on the premises by implied invitation and was doing work for the benefit of all parties, defendant owed him the affirmative duty to keep its premises in a reasonably safe condition or to warn him of dangerous conditions which defendant knew or should have known to exist. *Sorrentino v. Graziano et al.*, 341 Pa. 113, 17 A. 2d 373; *Kulka v. Nemirovsky*, 314 Pa. 134, 170 A. 261; *Curt v. Ziman*, 140

Pa. Superior Ct. 25, 12 A. 2d 802. Defendant not only failed in these duties, but its representative, in effect, (if we give plaintiff the benefit of favorable inferences from his testimony) assured plaintiff that the gate could be pulled out without danger of injury. It is negligence to invite. an act known to be dangerous. There is no duty to warn against the obvious (*Rice et al. v. Kring,* 310 Pa. 550, 165 A. 833; *Curt v. Ziman,* supra) but defendant is not relieved by the obvious fact that the overhead track for this gate had been removed. Plaintiff must have observed it and undoubtedly that was his reason for consulting Baldwin as to whether the gate nevertheless could be moved. Other defects were not obvious and were not readily observable because the gate standing behind the fence was so close to a nearby building on the premises as to be obscured by it to some extent at least. In the light of the verdict defendant cannot escape the charge of negligence on the ground that no duty rested upon it to warn plaintiff of dangers that were obvious. It was for the jury to say whether all of the defects in the operation of the gate warned plaintiff of obvious dangers under the circumstances. In our view the testimony of defendant's representative alone, convicts the defendant of negligence. He testified that he directed plaintiff and his fellow-painter to pull the gate out and that he helped them in the operation. And that when the gate was moved to "a resting position" in the roadway, after instructing them "to hold it perpendicular" he and his assistant went into a warehouse "to scout up some lumber . . . to hold it in position". Before they returned, the gate fell. The direction and conduct of Baldwin who knew of the defects in the gate, involved an unreasonable risk of causing bodily harm to plaintiff. Common prudence should have prompted him, at least, to have material at hand to shore up and support the outer end of the gate when pulled into the driveway. Instead, he left plaintiff and his helper to hold the gate upright in a precarious position while he sought it out.

The testimony does not convict plaintiff of contributory negligence as a matter of law. In the light of Baldwin's direction to plaintiff and his assurance that the gate could be safely moved, plaintiff was entitled to rely on the assumption that defendant had performed its duty of exercising due care for his safety. Accordingly since the danger was not patently obvious plaintiff was not required to make an independent survey to determine whether that duty, in fact, had been performed. *Kulka v. Nemirovsky,* supra. As was said in *Murphy v. Bernheim & Sons, Inc.,* 327 Pa. 285, 194 A. 194: "One's caution becomes intensified when he is conscious of danger; it is relaxed when he has no reason for apprehensions". Defendant is responsible for the false sense of security induced by Baldwin's direction; plaintiff had the right to assume that one in authority would not lead him into danger without warning. *Newingham v. J. C. Blair Co.,* 232 Pa. 511, 81 A. 556; *Christman et al. v. Segal,* 143 Pa. Superior Ct. 87, 17 A. 2d 676; *Teets v. Crescent Port. Cement Co.,* 123 Pa. Superior Ct. 85, 93, 186 A. 373.

Both defendant's negligence and plaintiff's contributory negligence were questions for the jury.

Judgment affirmed.