Chamberlain, Appellant, *v.* Penn-Rich Contracting Company, Inc., Appellant.

486

Argued January 6, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused July 15, 1960.

*Joseph H. Foster,* with him *Martin H. Philip,* and *Cletus M. Lyman* for plaintiff.

*J. Wesley McWilliams,* with him *Glenn A. Trout-man,* and *Loose, Kerestes & Bayer,* and *McWilliams, Wagoner & Troutman,* for defendant.

OPINION BY MR. JUSTICE BOK, June 30, 1960:

The single question is the plaintiff's contributory negligence. He has appealed because the court below held him guilty of it in an illogical order refusing judgment n.o.v. but granting a new trial on its own motion for the reason given.

Plaintiff had deep-mined the property, which is near Junedale in Carbon County and on which he was hurt, but a cave-in had buried his machinery. He then concluded an agreement with defendant for the latter to strip-mine the property. An addendum provided that any machinery recovered was to be considered plaintiff's and left for him to remove, and he was given the right to enter the property for that purpose. The contract also provided that plaintiff operate certain water pumps to help defendant, and he and his employe were at the property daily.

On the day of the accident, March 19, 1957, defendant uncovered a part of one of plaintiff's buried machines. Plaintiff was notified and reached the scene at about nine o'clock in the morning. He and his pump operator attached a chain to the buried machine, but when the defendant's shovel operator tried to pull it out, the chain broke. While this was going on, other employes of defendant were drilling blasting holes in the coal with a jackhammer. When plaintiff sought to continue salvaging his buried machine, defendant's officer, Snyder, told him that they had to go on with the stripping and that he should wait until afternoon, when the removal of coal and rock would have made salvage easier.

Plaintiff then left the property and went to the defendant's office at least half a mile away from the pit. While he was gone, defendant set off one blast to loosen the coal, and by about one o'clock seventy per cent of it had been removed. While in the office,

plaintiff was told by Snyder around noon to "go down and get [his machine] out of the stripping now" as it was interfering with their production.

Plaintiff and his employe returned to the pit, where they met Ray, defendant's foreman, who assented to plaintiff's taking a cable into the pit and helped him by straightening it.

The entire stripping pit was nine hundred feet wide and eighty-eight feet deep. There was a work bench, or shelf, about half-way down on which the shovel and other working equipment was located. The coal vein at the bottom was twenty feet thick.

Before entering the pit in the afternoon, the south wall looked solid to the plaintiff from where he was standing on the work bench, 150 to 190 feet away from the wall, when he looked at it. Actually the blasting and removal of rock and coal had undermined this wall, but once in the pit he could not see its true condition until he was ten to fifteen feet from it because of a pile of coal in front of it and because he was watching his footing while making his way over rough ground. He was further impeded by a pool of water. As he turned to walk away a rock fall occurred and an eight-ton stone fell from fifteen feet up in the south wall and crushed his leg, requiring its amputation.

He testified that no one told him not to go into the pit or that it was unusually dangerous at the time. He said that he did not know that the blast had been set off or how much coal had been taken or where it had been taken from. His testimony was corroborated at several points by other witnesses.

Defendant has also appealed because of the action of the court below in overruling its motion for judgment n.o.v. Hence we must read the evidence in the light most favorable to the verdict and reject all unfavorable testimony: *Burr v. Adam Eidemiller, Inc.*, 386 Pa. 416 (1956), 126 A. 2d 403.

Defendant's witnesses contradicted plaintiff at all critical points and established a clear case of contributory negligence. They said that not only was he present when the blast went off but that he hid under the shovel for protection with defendant's men before he left the property. He knew what the blasting was for, he knew that mining of any kind is dangerous, and he was definitely warned by defendant's responsible employes not to enter the pit. Not only did he disregard these clear instructions but he actually took a pick with him and hacked at the wall from which the rock soon fell on him. Such a state of facts would obviously entitle defendant to judgment. The jury, however, did not adopt it but accepted the plaintiff's version, and as it is outlined above we cannot say that reasonable minds could not differ over it: *Ashcraft v. Hussey & Co.,* 359 Pa. 129 (1948), 58 A. 2d 170. The facts thus established by the jury's belief clearly show only that plaintiff knew all mining to be dangerous but that in the specific case he was excusably unaware of special danger and was acting on defendant's instructions and even with its help. This may not be the result we would have reached were we sitting in the jury box, but we are not sitting there, and all we can be sure of is that unanimity of opinion for a different result does not necessarily follow.

Defendant's arguments are based upon the facts as it would like them, not as the jury found them. It cites, for example, *Brewster v. Morrone,* 395 Pa. 642 (1959), 151 A. 2d 607, and *Shula v. Warren,* 395 Pa. 428 (1959), 150 A. 2d 341, as authority for its argument that plaintiff entered an area of obvious danger. The distinction is that in the instant case the jury could and did find that the danger was masked and not obvious. The same may be said of *Daugert v. Scranton Contracting Co.,* 345 Pa. 206 (1942), 26 A. 2d 298, and *Biedrzycki v. Schrader, Inc.,* 347 Pa. 369

(1943), 32 A. 2d 31, which were rock fall cases and are cited by defendant. And since the jury apparently believed, or could have done, that the rock that injured plaintiff had been loosened by the blasting, of which the plaintiff knew nothing, it is folly to argue that at most the defendant's negligence was passive rather than active.

More in point are the business visitor cases, such as *Kulka v. Nemirovsky*, 314 Pa. 134 (1934), 170 A. 261; *Vetter v. Great A. & P. Tea Co.*, 322 Pa. 449 (1936), 185 A. 613; *Straight v. Goodrich Co.*, 354 Pa. 391 (1946), 47 A. 2d 605. Plaintiff was on the property by virtue of an express contractual right, and defendant owed him the duty of reasonable care: see Restatement, Torts, §343. The failure to warn him of conditions following the blast was negligence: *Jemison v. Pfeifer*, 397 Pa. 81 (1959), 152 A. 2d 697. In *Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, (1957), 130 A. 2d 123, we held a defendant responsible when its foreman placed equipment too near a power line, and plaintiff, a business visitor, was injured while operating a crane on defendant's land. We said: "Plaintiff had the right to assume that one in authority would not lead him into danger without warning." And in *Jemison v. Pfeifer*, supra (397 Pa. 81), we said: "It would be improper to hold that plaintiff was required to anticipate or assume that defendant had not taken the customary precautions or had not used due care in preparing for the demolition of the building." See also *Robb v. Gylock Corp.*, 384 Pa. 209 (1956), 120 A. 2d 174.

There are in evidence the Commonwealth's mining regulations requiring frequent examinations by a responsible official charged with the safety of employes and prohibiting men from working where there is evidence of danger. This was defendant's duty, and while plaintiff was familiar with the regulations, his very

familiarity with them may be said to have soothed his sense of danger to himself if defendant's men not only gave him no warning or prohibition but actually directed him to remove his property and helped him to do it: see *Murphy v. Bernheim & Sons, Inc.*, 327 Pa. 285 (1937), 194 A. 194. Plaintiff had been in the pit along with defendant's men before the blast, and granting, since the jury found it so, that he knew nothing of what went on between the time he left the pit and the time he returned to it, there was obviously no danger for him to know about unless he was told of it by defendant: *Stark v. Lehigh Foundries, Inc.*, supra (388 Pa. 1). In *Debenjak v. Parkway Oil Co.*, 159 Pa. Superior Ct. 603 (1946), 49 A. 2d 521, Judge HIRT quoted from *Murphy*: "One's caution becomes intensified when he is conscious of danger; it is relaxed when he has no reason for apprehensions", and went on to say of the *Debenjak* plaintiff: "Defendant is responsible for the false sense of security induced by Baldwin's direction; plaintiff had the right to assume that one in authority would not lead him into danger without warning."

We need not consider the motion for a new trial. Plaintiff filed one but withdrew it, and the court below then granted a new trial on its own motion for no other reason than that it felt "that the weight and preponderance of the plaintiff's own evidence proves that the plaintiff is guilty of contributory negligence and the jury should have so found." Feeling so, the court should have granted judgment n.o.v. The question before us is simply whether the plaintiff could be declared guilty of contributory negligence as a matter of law, which of course is reviewable here on appeal. Our opinion is that this question was for the jury.

The order granting a new trial is reversed, and the record is remanded with direction that judgment be entered on the verdict for the plaintiff.

Mr. Chief Justice Jones, Mr. Justice Bell and Mr. Justice Benjamin R. Jones would enter judgment for the defendant n.o.v.