Harry NOVICKI, a Minor, by Harlan Novicki, His Guardian, and Harlan Novicki and Mary Novicki, Appellants,

v.

**BLAW–KNOX COMPANY, a Corporation.**

No. 13671.

United States Court of Appeals
Third Circuit.

Argued Jan. 12, 1962.

Decided June 14, 1962.

Paul E. Moses, Pittsburgh, Pa. (Earl J. Cavanaugh, Evans, Ivory & Evans, Pittsburgh, Pa., on the brief), for appellants.

Bruce R. Martin, Pittsburgh, Pa. (Pringle, Bredin & Martin, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge and HASTIE and GANEY, Circuit Judges.

HASTIE, Circuit Judge.

The question on this appeal is whether the evidence warranted a verdict for the plaintiffs in an action against a landowner for negligent injury of an infant trespasser.

In several respects this case is an almost classic example of injury to a child caused by an attractive nuisance. Appellee, Blaw-Knox Co., is a manufacturer whose premises included a large open area near a housing project. In that area appellee was accustomed to assemble and leave bulky machines and materials for which it had no future use pending disposition of the accumulation as scrap or junk. The landowner was aware that children frequently played in this area and upon the discarded machinery. One of these habitues was the minor plaintiff, Harry Novicki. According to his testimony, his parents had ordered him not to play in the area but he had persisted "because it was fun playing on the steel things".

The day of the accident was the day following the minor plaintiff's 10th birthday. He and another boy undertook to play with and upon one of the discarded machines in appellee's yard. The machine was a large press. It was mounted on a low platform one step above the ground. Its operation involved the rotation of exposed wheels that were geared to each other. There was one large wheel about 5 feet in diameter. Its perimeter consisted of cogs that engaged cogs on a smaller wheel immediately below. The wheels were not locked or secured in any way. It was feasible for a boy to grasp a spoke of the large wheel with his hands and to wrap his legs around another spoke. If the wheel was then rotated, the rider would turn in cartwheel fashion.

On the occasion of the accident the plaintiff and another boy undertook to ride the large wheel in the described manner. The companion rode first. Plaintiff then attempted to ride in the same way. However, there was grease on the spoke of the wheel that he had grasped with his hands. In some manner his foot slipped and his hands lost their grip on the slippery spoke. He fell from the rotating wheel and his hand was mangled between the perimeter of that wheel and the meshing cogs of the wheel to which it was geared.

Along with a general verdict for the plaintiffs, a jury found specially that the defendant had been negligent and the minor plaintiff had not been contributorily negligent. Pursuant to these findings the jury awarded the minor plaintiff $9000 for injuries involving the amputation of a finger and the mutilation of a thumb. The sum of $1219.47 was awarded to the child's parents. However, on motion for judgment in accordance with an earlier motion for a directed verdict, the trial court set these awards aside and entered judgment for the defendant. It is from this judgment that the plaintiffs has appealed.

The accident occurred in Pennsylvania and liability is governed by the tort law of that state. The controlling general principles of law were correctly stated in the charge to the jury and they are not in dispute.

In Pennsylvania, Section 339 of the Restatement of the Law of Torts, is consistently accepted and applied as an authoritative statement of the principles which determine liability in a case like this. Indeed, the Supreme Court of Pennsylvania has stated explicitly "that § 339 has been adopted in toto by this Court and is the law of this State". Dugan v. Pennsylvania R. R., 387 Pa. 25, 31,

127 A.2d 343, 346. Accord Hyndman v. Pennsylvania R. R., 1959, 396 Pa. 190, 152 A.2d 251; Thompson v. Reading Co., 1942, 343 Pa. 585, 23 A.2d 729. That section reads as follows:

"**§ 339. ARTIFICIAL CONDITIONS HIGHLY DANGEROUS TO TRESPASSING CHILDREN.**

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming with the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

On this appeal, the landowner attempts to justify the judgment notwithstanding the verdict on the theory that the jury could not reasonably have found that the requirements of subsections (b) and (c) of § 339 had been met in this case. It is argued that to children in the plaintiff's class or category the abandoned machine created no "unreasonable risk * * * of harm" within the meaning of subsection (b), apparently because the record

was thought to show that the plaintiff could and did, within the meaning of subsection (c), fully "realize the risk involved in intermeddling" with the machinery.[1]

The court below thought that certain undisputed facts were controlling. The plaintiff admitted that he knew that there was grease on the spokes of the wheel on which he attempted to ride. He also knew that the wheel was somewhat elevated and that gravity would cause him to fall if he should lose his grip. Finally he knew that this wheel was geared to another and that he would be injured if his hand should be placed between the moving gears. But for a child to "realize the risk involved" in his conduct in such a situation as this, it is not enough that he be aware of the separate facts that grease is slippery, gravity pulls a body down and meshing gears can crush flesh and bone. He must also realize that there is a substantial likelihood that his conduct will bring these factors into combined and cooperating effect to his injury.

Here, the plaintiff knew that a hand caught between the gears would be injured but, in his own words, "we were not planning to stick our hand in the machine". At another point he was asked: "You knew that if you put your finger in between the gears you'd get hurt, didn't you?" He answered: "Yes. But we weren't thinking about getting hurt or nothing". In other words, overestimating his ability to retain a grip with his hands, legs and feet on the rotating wheel, the plaintiff underestimated the danger that several factors in his situation might combine to bring his hand into contact with the meshing cogs. We think it cannot be said as a matter of law that such childlike behavior and miscalculation were beyond the reasonable

1. Analytically, the argument that plaintiff fully understood but nevertheless subjected himself to the risk of intermeddling with the machinery may present an issue of contributory negligence more obviously than an issue as to defendant's lack of due care. This need not concern us because, if the evidence permits a conclusion that the plaintiff did not fully appreciate the risk involved in his conduct, the basic contention fails whether it is related to defendant's negligence or to plaintiff's contributory negligence.

anticipation of those responsible for leaving machinery operable and unattended where children were known to play.

In concluding that the risk was unreasonable, the jury may well and properly have been influenced by the fact that there was an obvious and inexpensive procedure for eliminating it. Here, there was testimony that the wheels of such machinery as this were usually wired down before the machine was discarded on the open lot, and that this process would require only about 30 minutes. However, that simple and customary precaution was omitted in this case. This fact, considered in the light of defendant's knowledge that children played on and around the machinery, could have led reasonable jurors to find that the defendant failed to exercise due care in all the circumstances. For cases similar to this one, in which the Supreme Court of Pennsylvania has emphasized the ability of an owner of machinery to eliminate the risk of injury to children at small expense and inconvenience, see Thompson v. Reading Co., supra; Reichvalder v. Borough of Taylor, 1936, 322 Pa. 72, 185 A. 270.

We think the Pennsylvania cases also support our conclusion that the extent of the child's appreciation of danger in such a situation as this is a jury question. The Supreme Court of Pennsylvania has said that the fact that children have repeatedly engaged in conduct similar to that which caused the harm in question is a factor which a jury may weigh in deciding whether the risk was fully appreciated. Hyndman v. Pennsylvania R. R., supra. Here, one of defendant's guards, as well as the infant plaintiff and his father, testified that children frequently played on or around this discarded machinery. Moreover, immediately before plaintiff tried to ride the rotating wheel, his companion had done the same thing without mishap.

More generally, the Pennsylvania courts have repeatedly ruled that the jury should decide the question of a child's appreciation of hazards which an adult would perceive clearly. In Cooper v. Reading, 1958, 392 Pa. 452, 140 A.2d 792, a 9 year old boy ventured out onto thin ice covering a pool, stamping his feet to test it as he proceeded. In Hyndman v. Pennsylvania R. R., supra, a 12 year old boy climbed a ladder on a railroad right of way to a transformer platform where inadequately insulated wires were within reach. In Bartleson v. Glen Alden Coal Co., 1949, 361 Pa. 519, 64 A.2d 846, a 12 year old boy climbed a tower supporting an exposed high voltage electric wire and ventured close to the wire itself. In Kuhns v. Brugger, 1957, 390 Pa. 331, 135 A.2d 395, 68 A.L.R.2d 761, not an attractive nuisance case, the question arose whether as a matter of law a 12 year old boy must be held to understand the risk of handling and pointing a pistol. In all of these cases the extent of the child's appreciation of the risk involved in his conduct was held to be a question for the jury. We think these cases strikingly exemplify the extreme reluctance of the highest court of Pennsylvania to have this issue decided as a matter of law. Justice, later Chief Justice, Horace Stern gave expression to this view when he said:

" * * * the care and caution required of a child is measured by his capacity to see and appreciate danger, and he is held only to such measure of discretion as is usual in those of his age and experience; this being necessarily a varying standard, the question is ordinarily one for the jury and not for the court * * *." Patterson v. Palley Mfg. Co., 1948, 360 Pa. 259, 267, 61 A.2d 861, 865.

Seeking to place this case in a special category, appellee asks that we apply the doctrine of the so-called "falling" cases. Pennsylvania does hold that even rather young children must be held as a matter of law to understand that if one falls from a high place he is likely to be injured. Malloy v. Pennsylvania R. R., 1956, 387 Pa. 408, 128 A.2d 40; McHugh v. Reading Co., 1943, 346 Pa. 266, 30 A.2d 122, 145 A.L.R. 319; Kravetz v. B. Perini & Sons, 3d Cir. 1958, 252 F.2d 905 (applying Pennsylvania law). But in all

of these cases it was the height which made the danger great and obvious and should have put even a child on guard. Moreover, it was the impact resulting from the fall that caused the injury. It would hardly be argued that this doctrine applies to the risk of "falling" from the edge of a sidewalk to the street slightly below.

Here, the platform of the machine was only a step above the ground. And from that slight elevation one could climb directly onto the wheel that plaintiff mounted. The impact of a fall from such a slight elevation would present no substantial risk of serious harm.

The danger, created by the defendant's failure to secure its machinery, was that a child playing on the machine or its platform might step or reach incautiously, or lose his balance or be playfully pushed, or in some other way become enmeshed in moving gears located on approximately the level of his activity. Cf. Hyndman v. Pennsylvania R. R., supra; Bartleson v. Glen Alden Coal Co., supra; Reichvalder v. Borough of Taylor, supra. This is quite different from the simple risk of hurting one's self by falling. In our view the "falling" cases do not control such a situation. The extent of this child's understanding of the risk of being mangled, as well as the companion question of the reasonableness or unreasonableness of subjecting children to that risk, should have been settled by the verdict of the jury.

The judgment will be reversed and the cause remanded for the reinstatement of judgment on the verdict.

GANEY, Circuit Judge (dissenting).

The nub of the question here posed is whether under the Restatement, Torts, § 339(c), the plaintiff, "realized the risk involved" when he sustained injuries as a result of his wrapping his legs around the spoke of a large wheel which was intermeshed with a smaller one and on which he undertook to ride the large wheel, going completely around in cartwheel fashion, which wheel was slippery and greased.

It is the law of Pennsylvania that liability may only be imposed in cases of this type where all the requirements, (a), (b), (c) and (d) of § 339 were present. Dugan v. Pennsylvania Railroad Co., 387 Pa. 25–32, 127 A.2d 343; Jennings v. Glen Alden Coal Co., 369 Pa. 532, 536, 87 A.2d 206; Verrichia v. Society Di M. S. Del Lazio, 366 Pa. 629, 631, 79 A.2d 237. Accordingly, in order to impose liability, it is requisite that the plaintiff meet the requirements of subsection (c) of § 339 of the Restatement, Torts, which provides as follows:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintained upon the land, if

\* \* \* \* \* \*

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or coming within the area made dangerous by it, and
\* \* \*."

It is submitted that the record here clearly shows that this child of ten years of age had a full and complete realization of the risk involved in the conduct he engaged in with his playmate in turning himself around on this wheel by clinging to the large spokes which were part of it. It is equally clear, as shown by numerous cases in Pennsylvania, that "the measure of a child's responsibility is his capacity to see and appreciate danger, and the rule is that, in the absence of clear evidence of the lack of it, he will be held to such measure of discretion as is usual in those of his age and experience. This measure varies, of course, with each additional year." Rice v. Kring, 310 Pa. 550, 556, 165 A. 833, 835. In Parker v. Washington Electric Street Railway Co., 207 Pa. 438, 441, 56 A. 1001, the court speaks as follows: "It follows that as responsibility depends upon the knowledge and experience of the child and on the character of the danger to which he

is exposed, generally the question is one for the jury, and not for the court. This must always be so when the facts are in dispute or the inferences to be drawn from them are doubtful. But in clear cases, where the facts are settled, and there can be no reasonable doubt as to the inferences to be drawn, the question may be determined by the court as matter of law." Gress v. Phila. & Reading Ry. Co., 228 Pa. 482, 486, 77 A. 810, 32 L.R.A., N.S., 409.

I am in agreement with the majority that the so-called "falling out" cases in Pennsylvania, Malloy v. Pennsylvania R. R. Co., 387 Pa. 408, 128 A.2d 40; Mc-Hugh v. Reading Co., 346 Pa. 266, 30 A. 2d 122, 145 A.L.R. 319, are, in the instant case, not applicable. However, I think it clear from the record that this admittedly bright boy of ten years of age was fully aware of the danger inherent in the situation which he created on his own admissions. The majority quotes certain portions of the record where the plaintiff admitted that if he put his finger between the gears he would get hurt, but also added "we were not planning to stick our hands in the machine." It seems obvious that this, in no wise, mitigates the fact of contributory negligence for, if a child of ten years would deliberately plan to stick his hand in the meshed gears of the machine, his competence would be that of a low moron. However, the record discloses, in another instance, the minor plaintiff clearly stated that if his hand got caught in the gears, he would get hurt.

A more complete reading of the record shows, to my mind, conclusively, that this boy had complete realization of the risk here involved.

When asked concerning his conduct, he answered as follows:

"Q. Then what did you do? A. We started walking down towards the machines. Then we decided to play with the machines since we found out that the one machine moved, the gears moved pretty freely.

"Q. So that before you got tangled up with that machine, you knew that those gears moved pretty freely, didn't you? A. Yes, we was trying them.

\* \* \* \* \* \*

"Q. You knew on these big gears that moved pretty freely that if you got your hand in those gears you'd get hurt. Did you know that? A. Yes, sir.

\* \* \* \* \* \*

"Q. \* \* \* Now, Harry, you also knew when you were ten years old, before this accident happened, you knew that grease was slippery, didn't you? A. Yes, sir.

"Q. And you knew there was grease on this machine? A. Yes, sir.

"Q. And especially on the gears. Isn't that right? A. Yes.

"Q. Of course, you spoke about rust in the machine. The rust wouldn't be where the grease was, would it? A. No.

"Q. In fact, the grease would help keep it from getting rusty. Isn't that right? A. Yes, sir.

"Q. I didn't quite understand or I don't quite remember what you said about where you had your hands when you were on this gear. Tell me that again. A. Like on a bicycle, you have the spokes.

"Q. Yes. A. Well, they're big thick spokes on the gear. I had it wrapped around, like this.

"Q. Wrapped around the spokes? A. Yes. On the big wheel.

"Q. Well now, somehow or other, Harry, your hand got from being wrapped around the spokes—your right hand got from there into the gears themselves, didn't it, the cogs of the gear? A. Yes, sir.

"Q. Can you tell us how that happened? A. I can't remember. It happened so fast.

"Q. You said something about slipping on grease. Now, what did you mean by that? A. I lost my footing, because—I had my foot on another spoke, and I slipped on it. My footing slipped. And it put more weight on my hand and my hand just slipped from the grease.

"Q. In other words, what happened, Harry, is that you were standing on the spokes of this wheel on this machine, a gear wheel on the machine. You were standing on the spokes and you fell off, and your hand got hurt somehow while you were falling. Is that about it? A. Yes, sir.

"Q. Now, was this wheel you were standing on moving or still while you were standing on it? A. Alan was moving it. He turned the —it was a different wheel. He turned it, and it turned this big one.

We thought we'd get a ride on it."

This testimony is clear and unequivocal that, though minor plaintiff was only ten years of age, he realized that the spokes of the wheel were greasy around which he had to wrap his legs and feet and, that in the process, the big gears moved very freely because they tried them and, finally, that if his hands got caught in them he would get hurt. This is exactly what happened in the turning of the small wheel which turned the larger wheel in the spokes about which he was wrapped around, to secure a sort of cartwheel ride, he slipped, fell from the wheel and his hand became enmeshed in the same.

There can be no question but that the case cited in the majority opinion, Hyndman v. Pennsylvania R. R. Co., 396 Pa. 190, 152 A.2d 251, there was a question for the jury where the plaintiff, a young boy of eleven years of age, a tenderfoot with a Boy Scout troop, was encamped approximately fifty feet from a steel pole which had a metal ladder leading to a steel platform where the transformer apparatus was located and which was affixed to the platform. From this apparatus, two parallel vertical wires, with light insulation, led from above the platform down to the top of the transformer. The young boy, thinking that one of these wires was a pipe, placed his hand on it and the electrical contact threw him to the ground where he was severely injured. In Thompson v. Reading R. R. Co., 343 Pa. 585, 23 A.2d 729, there was a turntable upon which the plaintiff threw himself to get a ride, which was being turned around by a group of boys and he became wedged between the turntable and a concrete wall. In these and the remaining cases which the majority cites, there were factual inferences which could be drawn by a jury or there were disputed questions of fact which made it encumbent for a jury to decide, rather than a question of law for the court.

I am not unmindful of the many Pennsylvania cases, too numerous for repetition, concerning the heavy burden the possessor of land has in overcoming the plaintiff's right to a jury passing on the determination of his alleged contributory negligence in the light of his youth and surrounding circumstances. However, since § 239 of the Restatement, Torts, is imbedded in the law of Pennsylvania, Thompson v. Reading R. R. Co., supra, Altenbach v. Lehigh Valley R. R., 349 Pa. 272, 37 A.2d 429, I am clearly persuaded that the plaintiff here appraised the risk involved and fully realized it by the plain, unequivocal and voluntary admission made by him in connection therewith.

Accordingly, I would affirm the judgment of the lower court.